[Cite as *State v. Blankenship*, 2014-Ohio-3600.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 13CA3417 |
| vs. | : | |
| ANTHONY L. BLANKENSHIP, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

_____

APPEARANCES:

COUNSEL FOR APPELLANT:      Lori J. Rankin, 14 South Paint Street, Second Floor, Suite 1, Chillicothe, Ohio 45601

COUNSEL FOR APPELLEE:       Matthew S. Schmidt, Ross County Prosecuting Attorney, and Jeffrey C. Marks, Ross County Assistant Prosecuting Attorney, 72 North Paint Street, Chillicothe, Ohio 45601-3202

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 8-14-14
ABELE, P.J.

{¶ 1}    This is an appeal from a Ross County Common Pleas Court judgment of conviction and sentence.  The court found Anthony L. Blankenship, defendant below and appellant herein, guilty of cocaine possession.

{¶ 2}    Appellant assigns the following error for review:

"THE TRIAL COURT ERRED IN VIOLATION OF MR.
BLANKENSHIP'S RIGHTS UNDER THE FOURTH
AMENDMENT TO THE UNITED STATES CONSTITUTION
AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION

WHEN THE TRIAL COURT OVERRULED MR.
BLANKENSHIP'S MOTION TO SUPPRESS [THE] EVIDENCE."


{¶ 3}    On November 4, 2011, a Ross County Grand Jury returned an indictment that charged appellant with the possession of cocaine, in violation of R.C. 2925.11.   Appellant entered a not guilty plea and later filed a motion to suppress evidence obtained as a result of his interaction with Chillicothe Police Officer Michael Short.   Appellant argued, in part, that the officer lacked reasonable suspicion or probable cause to seize him.

{¶ 4}    On June 8, 2012, the trial court held a hearing to consider appellant's motion to suppress.   Officer Short testified that on July 23, 2011, at approximately 3:40 p.m., he noticed appellant in a gas station parking lot leaning into the passenger side window of a vehicle and "observed some type of hand to hand action as if [appellant and the passenger] were passing an item back and forth."   Officer Short stated that "a lot of drug transaction[s]" occur "at our gas station parking lots * * * * They kind of pick a spot, and then they quickly do an exchange and they're gone." Officer Short pulled his cruiser into the lot and approached appellant and the passenger, who had exited the vehicle.   Officer Short engaged the passenger in conversation, but appellant "would not make eye contact with [the officer], he was very nervous, knees, hands were shaking, was just looking around trying to * * * just get away from me type of thing * * * not really wanting to look at me."   Officer Short described appellant's "nervousness" as "extreme." He further stated that appellant "kept adjusting his pants," and that in his experience, "when someone is nervous they also touch what they're nervous about."   The officer explained that he could see a "little bulge" in appellant's pant pocket.   He then "just told [appellant] to step over here with me and just have [the passenger] stay."   He explained that they "took a couple of steps

to the right, because [the passenger] was trying to do all the talking" and Officer Short wanted to hear from appellant. Officer Short asked appellant if "anything illegal" was occurring. Appellant stated that he had "powder" on him. Officer Short stated that "powder" meant "cocaine in powder form." Officer Short subsequently arrested appellant.

{¶ 5} On July 27, 2012, the trial court overruled appellant's motion to suppress evidence. The court found:

> "Officer Short testified that on July 23, 2011 he was working in his employment as a patrol officer when he noticed [appellant] at a gas station leaning into the passenger's side of a red Chevy. He noticed [appellant] conduct 'hand to hand action' with another person appearing to pass something between them. As soon as the individuals noticed Officer Short they quickly exited their vehicle. Officer Short testified that in his experience when an individual quickly puts distance between themselves and a vehicle it suggests to him that they have something to hide in the vehicle. Officer Short was aware of complaints of drug activity occurring at local gas stations so he parked his vehicle and approached the individuals. Short made contact with [appellant] and James Seward outside the red Chevy at the rear of the vehicle and told them that their behavior was 'suspicious.' Seward agreed with the officer, but said nothing illegal was going on. [Appellant] refused to make eye contact and was very nervous, his knees and hands were shaking and trembling. Officer Short approached the two on his own, with no other officers present, he did not activate his lights or order either man to remain. [Appellant] kept adjusting his pants and and kept touching his right hand pocket. Officer Short noticed a bulge in the pocket and asked [appellant] to step away from James Seward. Officer Short testified that [appellant] was free to leave the entire time and that nothing was blocking his path if he decided to walk away. Officer Short asked him why he was so nervous and asked him if he had anything on him. [Appellant] replied that he had 'powder' on his person. Officer Short said "I appreciate you being honest with me,' and he then detained [appellant] and advised him of his Miranda rights."

The court determined that the initial encounter was not a seizure and explained:

> "Officer Short was on routine patrol when he pulled into a public gas station. There is no doubt that he had the same right to be there as any other citizen. Officer [S]hort did not activate his overhead lights or demonstrate his authority in any manner. He did not command anyone to stop or stay and speak with him. The only thing he did that might be construed as a show of authority is

that he asked [appellant] to move away from James Seward so they could speak alone.    This simply is not enough to constitute a seizure within constitutional guidelines."

The court additionally determined that even if Officer Short had seized appellant, the officer possessed reasonable suspicion to do so.

{¶ 6}    Subsequently, appellant entered a no contest plea.    This appeal followed.

{¶ 7}    In his sole assignment of error, appellant asserts that the trial court erred by overruling his motion to suppress evidence.    In particular, appellant contends that the trial court improperly determined that the encounter between appellant and Officer Short was consensual and did not constitute a seizure.    Appellant argues that the encounter lost its consensual nature and became a seizure when the officer ordered appellant to "step over here."    Appellant recognizes that the trial court characterized the officer's statement as a request to "step over here."    Appellant points out, however, that the officer testified that he "told" appellant to "step over here."    Appellant argues that the officer's testimony thus establishes that he did not phrase his statement as a question, but instead, phrased it as a command.    Appellant contends that because the officer phrased his statement as a command, the encounter lost its consensual nature and ripened into a seizure subject to Fourth Amendment scrutiny.

I

STANDARD OF REVIEW

{¶ 8}    Appellate review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact.    State v. Codeluppi, — Ohio St.3d —, 2014-Ohio-1574, — N.E.2d —, 7; State v. Wesson, 137 Ohio St.3d 309, 2013-Ohio-4575, 999 N.E.2d 557, ¶40; State v. Burnside, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶8; State v. Moore, – Ohio App.3d —,

2013-Ohio-5506, 5 N.E.3d 41 (4th Dist.), ¶7.   The <u>Burnside</u> court explained this standard as

follows:

> "When considering a motion to suppress, the trial court assumes the role of
> trier of fact and is therefore in the best position to resolve factual questions and
> evaluate the credibility of witnesses.   Consequently, an appellate court must accept
> the trial court's findings of fact if they are supported by competent, credible
> evidence.   Accepting these facts as true, the appellate court must then
> independently determine, without deference to the conclusion of the trial court,
> whether the facts satisfy the applicable legal standard."

<u>Id.</u> (citations omitted).

II

FOURTH AMENDMENT PRINCIPLES

{¶ 9}   The Fourth and Fourteenth Amendments to the United States Constitution, as well

as Section 14, Article I of the Ohio Constitution, protect individuals against unreasonable

governmental searches and seizures.   <u>Delaware v. Prouse</u>, 440 U.S. 648, 662, 99 S.Ct. 1391, 59

L.Ed.2d 660 (1979); <u>State v. Gullett</u>, 78 Ohio App.3d 138, 143, 604 N.E.2d 176 (1992).   "Once

the defendant demonstrates that he was subjected to a warrantless search or seizure, the burden

shifts to the State to establish that the warrantless search or seizure was constitutionally

permissible."   <u>State v. Hansard</u>, 4th Dist. Scioto No. 07CA3177, 2008–Ohio–3349, ¶14, citing

<u>Maumee v. Weisner</u>, 87 Ohio St.3d 295, 297, 720 N.E.2d 507 (1999), and <u>Xenia v. Wallace</u>, 37

Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph two of the syllabus.

{¶ 10} Although the Fourth Amendment prohibits unreasonable seizures, not every

police-citizen encounter constitutes a "seizure" subject to Fourth Amendment scrutiny.   <u>United</u>

<u>States v. Mendenhall</u>, 446 U.S. 544, 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); <u>Terry v. Ohio</u>,

392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ("Obviously, not all personal

intercourse between policemen and citizens involves 'seizures' of persons."). Rather, Fourth Amendment concerns arise "[o]nly when the officer, by means of a physical force or show of authority, has in some way restrained the liberty of a citizen." Id.; Florida v. Bostick , 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Thus, a "seizure" occurs when the police conduct and the totality of the circumstances surrounding the encounter "'communicate[] to a reasonable person that he [i]s not at liberty to ignore the police presence and go about his business.'" Bostick, 501 U.S. at 437, quoting Michigan v. Chesternut, 486 U.S. 567, 569, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); accord Kaupp v. Texas, 538 U.S. 626, 629-630, 123 S.Ct. 1843, 155 L.Ed.2d 814 (2003); Mendenhall, 446 U.S. at 554 ("A person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.").

> "Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person."

Mendenhall, 446 U.S. 544, 554-555 (citations omitted).

{¶ 11} A consensual encounter is not a seizure and does not trigger Fourth Amendment scrutiny. Bostick, 501 U.S. at 434. Accordingly, a Fourth Amendment seizure does not occur when a law enforcement officer "merely approach[es] an individual on the street or in another public place" and "ask[s] him if he is willing to answer some questions." Florida v. Royer, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); see, also, Bostick, 501 U.S. at 434 (stating that "a seizure does not occur simply because a police officer approaches an individual and asks a

few questions"). An encounter will not lose its consensual nature "[s]o long as a reasonable

person would feel free 'to disregard the police and go about his business.'" Bostick, 501 U.S. at

434, quoting California v. Hodari D., 499 U.S. 621, 628, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).

{¶ 12} In the case at bar, appellant does not dispute that the encounter with the officer

began as a consensual encounter. The officer merely approached appellant and his companion to

engage in conversation. Appellant contends, however, that the encounter lost its consensual

nature and ripened into a seizure when the officer "told" appellant to "step over here." Appellant

argues that the officer's statement constituted a show of authority sufficient to transform the

encounter from a consensual one to a seizure.

III

CONSENSUAL ENCOUNTER OR SEIZURE

{¶ 13} While no "litmus-paper test [exists] for distinguishing a consensual encounter from

a seizure," Royer, 460 U.S. at 506, certain factors may indicate that a seizure has occurred.

> "[A]n encounter becomes a seizure if the officer engages in conduct which a
> reasonable man would view as threatening or offensive even if performed by
> another private citizen. This would include such tactics as pursuing a person who
> has attempted to terminate the contact by departing, continuing to interrogate a
> person who has clearly expressed a desire not to cooperate, renewing an encounter
> with a person who earlier responded fully to police inquiries, calling to such a
> person to halt, holding a person's identification papers or other property, blocking
> the path of the suspect, physically grabbing and moving the suspect, drawing a
> weapon, and encircling the suspect by many officers * * *."

4 LaFave, Search and Seizure (3 Ed.1996) 102-04, Section 9.3(a) (footnotes omitted).

Additionally, as this court held in State v. Cookson, 4th Dist. Washington No. 00CA53 (Sept. 25,

2001): "Encounters * * * become seizures only when the police demonstrate a sufficient show of authority such that a reasonable person would conclude that he must comply."

{¶ 14} "[T]he test for existence of a 'show of authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." Hodari D., 499 U.S. at 628. Additionally, "because so much of the meaning of [an officer's] comment is carried in the tone of voice of the person making it," a reviewing court should generally defer to the trial court's characterization of the comment. In re Nesser, 4th Dist. Ross No. 00CA2551 (Dec. 1, 2000).

{¶ 15} In United States v. Drayton, 536 U.S. 194, 122 S.Ct. 2105, 153 L.Ed.2d 242 (2002), the court determined that law enforcement officers engaged bus passengers in consensual encounters when the officers did not give the passengers any reason to believe that they were required to answer their questions, did not brandish any weapons or make any intimidating movements, left the aisle clear so that the passengers could exit, and spoke to the passengers in a "polite, quiet voice." Id. at 203-24. The court explained: "There was no application of force, no intimidating movement, no overwhelming show of force, no brandishing of weapons, no blocking of exits, no threat, no command, not even an authoritative tone of voice." Id. at 204.

{¶ 16} Even when a law enforcement phrases a statement in an imperative or declarative–rather than in an interrogative–fashion, courts have generally ruled that an imperative or declarative statement, by itself, does not transform a consensual encounter into a seizure. See Columbus v. Body, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379; State v. Duncan, 9th Dist. Summit No. 21155, 2003-Ohio-241; United States v. Brown, 447 Fed.Appx. 706, 708-709 (C.A.6, 2012). Instead, courts must examine the totality of the circumstances present in each case in order

to ascertain whether an imperative or declarative statement constitutes a sufficient show of authority to ripen a consensual encounter into a seizure subject to Fourth Amendment scrutiny. See, e.g., Kaupp, supra (stating that courts must take into account all of the circumstances surrounding the encounter).

{¶ 17} Thus, in Body, for example, the court determined that a law enforcement officer had not seized the defendant by approaching the defendant in a public place and stating "come over here." Id. at ¶16. The court further noted that the officer (1) acted "without the 'threatening presence of several officers,'" (2) "did not activate his siren or search light," (3) "did not attempt to block [the defendant]'s vehicle or path," (4) did not "attempt to pursue [the defendant]," and (5) did not use a threatening voice. Id. at ¶20, quoting Mendenhall, 446 U.S. at 554. The court also observed that the officer testified that he stated "come over here" "in the form of a request rather than a command." Id.

{¶ 18} In reaching its decision, the Body court relied upon State v. Smith, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989), reversed on other grounds, Smith v. Ohio, 494 U.S. 541, 110 S.Ct. 1288 108 L.Ed.2d 464 (1990). In Smith, the Ohio Supreme Court held that a consensual encounter did not ripen into a seizure when an officer stated to the defendant, "hey, come here a minute." Id. at 258-259. The Smith court additionally observed that the officers did not display any weapons, did not physically touch the defendant, did not use a threatening tone of voice, did not order the defendant into the police cruiser, did not indicate that the defendant's noncompliance would lead to his arrest, and did not block the defendant's exit with their cruiser.

{¶ 19} The Body court also relied upon State v. Duncan, 9th Dist. Summit No. 21155, 2003-Ohio-241. In Duncan, the court determined that a consensual encounter did not ripen into a

seizure when the officer stated to the defendant, "come over here for a second." Id. at ¶15. The court also observed that the officer "did not display any physical force or order [the defendant] to do anything." Id. at ¶16.

{¶ 20} The Body court further looked to federal courts and noted that those "courts have also recognized that 'simply calling out to someone to come over to talk does not constitute a seizure.'" Id. at ¶18, quoting United States v. Brown, 447 Fed.Appx. 706, 708-709 (C.A.6, 2012), citing United States v. Matthews, 278 F.3d 560, 562 (C.A.6, 2002), abrogated on other grounds, United States v. McMurray, 653 F.3d 367 (C.A.6, 2011) (holding that officer's statement, "[h]ey, buddy, come here," did not constitute a seizure because the addressee could have "politely declined to do so, and walked away").

{¶ 21} In State v. Cook, 2nd Dist. Montgomery No. 20427, 2004-Ohio-4793, the court determined that an officer's imperative statement, coupled with his actions, ripened a consensual encounter into a seizure. In Cook, the officer "ordered" the defendant to "open up [her] hand so [the officer could] see what's inside of it. Id. at ¶15. The court concluded that the officer's language indicated that he "commanded—not requested–" the defendant to open her hand. The court further observed that the officer's police cruiser "imped[ed]" the defendant's "path of travel." Id. The court found that "a reasonable person would not have felt free to ignore the order of a police officer and to walk away." Id. The court thus determined that the defendant "was subject to an investigatory detention when she was ordered to open her hand." Id.

{¶ 22} In State v. Kelly, 2nd Dist. Clark No. 3007 (Sept. 24, 1993), the court determined that a seizure–and not a consensual encounter–occurred when the officer pursued the defendant after the defendant had ignored the officer's first request to talk. In Kelly, the officer pulled his

police van alongside the defendant and asked if the officer could talk to the defendant.   The

defendant ignored the officer and continued walking.   The officer continued to follow the

defendant and pulled the van alongside him again.   The officer stated, "I need to talk to you."

The defendant replied that he had not done anything wrong and continued walking.   The officer

then exited the van, walked up to the defendant, and stated, "I am going to talk to you."   In

concluding that these facts demonstrated a seizure, the court explained:

> "It is evident from these facts that [the defendant] was not, at least after
> Officer King had exited his van, free to disregard the officer's questions, and that
> compliance with the officer's request might be compelled.   Under the totality of
> these facts and circumstances a reasonable person would not believe that he was
> free to leave.   As the actions of police in this case constitute a restraint upon [the
> defendant]'s liberty, a seizure of [the defendant]'s person occurred and, absent a
> warrant, that seizure is presumed to be unreasonable and, therefore, in violation of
> the Fourth Amendment."

{¶ 23}   In the case at bar, we agree with the trial court's conclusion that when the officer

first approached appellant, no "seizure" occurred within the context of the Fourth Amendment.

We also agree with the trial court's conclusion that the officer's statement to appellant to "step

over here" did not turn the encounter into a seizure.   No evidence exists that the officer used a

threatening voice when he told appellant to "step over here."   Moreover, the trial court found that

the officer phrased the statement in terms of a request.   Even if the officer did not phrase the

statement as a question, the court could have determined, based upon the officer's testimony at the

suppression hearing, that the officer intended the statement to be a request instead of a command.

As we stated in Nesser, supra, the tone in which an officer phrases a statement is difficult to

perceive from the written record and thus we must generally defer to the trial court's

characterization of the statement.   We see nothing in the record to make us believe that the trial

court mischaracterized the officer's statement as a request, even though it was not grammatically phrased in an interrogatory fashion.

{¶ 24} Furthermore, the officer did not engage in any other conduct that could be construed as a show of authority sufficient to constitute a seizure.   The officer did not (1) pursue appellant, (2) continue to interrogate appellant against his expressed desire, (3) call to appellant to halt, (4) hold his identification or other property, (5) block his path, (6) physically grab or move him, (7) draw his weapon, or (8) encircle him with many officers.   LaFave, supra.   Additionally, like the officers in Body and Smith, the officer in the case sub judice did not (1) activate his siren or cruiser lights, (2) block appellant's path, (3) attempt to pursue appellant, (4) display a weapon, (5) use a threatening tone of voice, or (6) indicate that appellant's noncompliance would lead to his arrest. Moreover, Officer Short acted alone during the initial encounter and there was not a "threatening presence of several officers."   Mendenhall, 446 U.S. at 554.   Additionally, unlike the situation in Kelly, appellant had not attempted to ignore or walk away from Officer Short, and Officer Short did not have to engage in any pursuit in order to interact with appellant.     Although appellant suggests that the instant case is indistinguishable from Cook, we do not agree.   In Cook, not only did the officer order the defendant to reveal an item she had concealed in his hand, but the officer also blocked the defendant's path of travel.   In the case sub judice, the trial court characterized Officer Short's statement to "step over here" as a request, not an order.   Even if the officer's statement to "step over here" could be construed as an order, Officer Short did not block appellant's path of travel like the officer did in Cook.   More important, we believe that a distinction exists between ordering an individual to reveal an item concealed in her hand and requesting or ordering an individual to "step over here."   Normally, when an individual steps from

one location to another, that individual will not reveal incriminating information by the simple act of movement.   In contrast, when an individual opens his hand in response to an officer's directive to open it, that individual may reveal incriminating information by the simple act of opening his hand.   Thus, an officer's order to an individual to "open up" his hand suggests that the officer is attempting to obtain incriminating information, while an order to "step over here" may be for simple convenience, as it was in the case at bar.   We therefore do not believe that an officer's statement to "step over here" is equivalent to ordering an individual to "open up" his hand and necessarily ripens a consensual encounter into a seizure.

{¶ 25} Therefore, in light of the foregoing, we do not believe that a reasonable person would have construed Officer Short's statement to "step over here" as an order restraining that person's movement and as indicating that the person was not free to leave.   Bostick, 501 U.S. at 434; Hodari D., 449 U.S. at 628.   Consequently, the trial court properly concluded that the encounter between appellant and Officer Short was consensual, that a seizure had not occurred. Thus, the court correctly overruled appellant's motion to suppress evidence.

{¶ 26} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's sole assignment of error and affirm the trial court's judgment.

                                                                    JUDGMENT AFFIRMED.

<u>JUDGMENT ENTRY</u>

It is ordered that the judgment be affirmed and that appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.

The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.: Concur in Judgment & Opinion

For the Court

BY:_____

Peter B. Abele
Presiding Judge

**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.