[Cite as *State v. Hurtt*, 2018-Ohio-1263.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | Case No. 17CA3588 |
| v. | : | |
| | | DECISION AND |
| RYAN C. HURTT, | : | JUDGMENT ENTRY |
| Defendant-Appellant. | : | RELEASED 03/30/2018 |

APPEARANCES:

Timothy Young, Ohio Public Defender, and Terrence K. Scott, Assistant Ohio Public Defender, Columbus, Ohio for Appellant.

Sherri K. Rutherford, City of Chillicothe Law Director, Chillicothe, Ohio for Appellee.

PER CURIAM.

{¶ 1} Defendant-appellant, Ryan Hurtt, appeals the judgment of the Chillicothe Municipal Court convicting him of possessing drug abuse instruments and sentencing him to two days in jail, one year of community control, and a $50 fine plus court costs. On appeal, Hurtt claims that the trial court erred in overruling his motion to suppress evidence of the crime that was found in his vehicle. Specifically, Hurtt argues that the evidence warranted suppression because it was obtained following an illegal stop. For the following reasons, we affirm the judgment of the trial court.

**I. Facts and Procedural History**

{¶ 2} On July 5, 2016, Hurtt was charged in the Chillicothe Municipal Court with one count of possessing drug abuse instruments in violation of R.C. 2925.12(A), a

second-degree misdemeanor. He subsequently moved to suppress the evidence, arguing that it was obtained following an illegal stop.

{¶ 3} On October 4, 2016, a suppression hearing was held, where the following evidence was presented:

{¶ 4} Just after midnight on July 4, 2016, authorities received a call about a suspicious red vehicle with two male occupants on Mechanic Street in Chillicothe. The caller, who wished to remain anonymous, stated that "the vehicle was not a normal vehicle that's in the area, that they have never recognized before, they could currently see the vehicle when they called in." Officer Nicholas Shepherd of the Chillicothe Police Department was dispatched to the area to investigate.

{¶ 5} When Officer Shepherd arrived, he pulled behind a legally parked vehicle matching the caller's description.[1] He shined his cruiser's spotlight on the vehicle and approached it with his handheld flashlight. Around that time, one of the occupants, later identified as Lee Seymour, exited the vehicle and began looking through the trunk.[2] Officer Shepherd had Seymour stop immediately for officer safety and move to the front of the vehicle. He had the driver, later identified as Hurtt, exit the vehicle and do the same. When Seymour and Hurtt got to the front of the vehicle, Officer Shepherd patted them down, again for officer safety.

{¶ 6} While at the front of the vehicle, Officer Shepherd noticed that Seymour and Hurtt had blood-shot eyes. Additionally, Seymour appeared "very unsteady on his feet. * * * He was sweating profusely. He seemed slurred of speech as he spoke. He

---

[1] Officer Shepherd apparently ran the vehicle's tags when he arrived on scene, and the vehicle came back as not "being in that area."
[2] Officer Shepherd could not recall whether he saw Seymour get out of the vehicle or if Seymour was already in the trunk when he arrived.

swayed side to side while he was talkin'. * * * His speech was very slurred and stuttered

as if he was under the influence of alcohol or drugs." At that point, Officer Shepherd

advised Seymour and Hurtt of their Miranda rights.

{¶ 7} Once the men were secure, Officer Shepherd looked in the vehicle and saw,

in plain view, a Pepsi can with burn marks and red liquid on it. Through his training and

experience, he believed it to be drug paraphernalia. He then searched the vehicle and

found narcotics and hypodermic needles.

{¶ 8} On November 30, 2016, the trial court denied Hurtt's motion. In doing so, it

made the following findings of fact:

> At approximately 12:10 am, Shepherd was dispatched to the area of
>
> Mechanic Street in the city of Chillicothe, Ohio on the report of a
>
> suspicious vehicle red in color with two occupants. The initial report of
>
> the vehicle was made by a caller who wished to stay anonymous. The
>
> caller stated that he or she did not recognize the vehicle as one from
>
> normally in the neighborhood. The caller further provided the color of the
>
> vehicle, the number of persons inside, and the location where it was
>
> parked.
>
> Shepherd arrived in the area at approximately 12:12 am. Upon arrival, he
>
> pulled a vehicle matching the description provided by the anonymous
>
> caller and noticed that it had two occupants. The vehicle was legally
>
> parked. The license tags indicated that it was not registered to an address

in the area where it was parked. Shepherd brought his cruiser to a stop; he did not activate his overhead lights but used his spotlight and flashlight.

The passenger exited the vehicle, opened the truck, and began searching its contents. Concerned for his safety, Shepherd ordered the passenger and the driver to step to the front of the vehicle. The driver was identified as the defendant in this case. The driver had bloodshot eyes.

The passenger had bloodshot eyes, slurred speech, swayed, and was sweating profusely. Shepherd testified that the passenger was under the influence. Both the defendant and the passenger were detained and advised of their Miranda rights. Shepherd looked in the passenger compartment of the vehicle. In open view, he saw a soda can upside down with a liquid on it. Shepherd testified that based on his training and experience, this was consistent with the use of heroin.

The vehicle was then searched, and narcotics and needles were located.

{¶ 9} Based on these factual findings, the trial court made the following conclusions:

Had Shepherd been afforded the opportunity to approach the vehicle and merely look in its windows, the facts in this case would clearly establish a consensual encounter with no implication of the Fourth Amendment of

Article I, Section 14. That is not, however, the facts before the court. Instead, the passenger exited the vehicle, opened the trunk and began searching its contents upon Shepherd's arrival. These actions caused Shepherd concern for his safety. Moreover, these are the actions that caused Shepherd to order the passenger and the defendant to the front of the vehicle and that elevated the incident to an investigatory stop. It was not the information provided by an anonymous caller, the time of night, or the location of the vehicle.

"Society recognizes the need to protect officers who are engaged in investigations." *State v. Shrewsbury*, 2014-Ohio-716, ¶ 23 (citations omitted). When issues of an officer's safety arise and are supported by articulable facts, courts should not scrutinize the claim too critically, nor should they second guess an officer in a close case." *Id*. at ¶ 24. A reasonable officer could believe that the passenger may have been retrieving a weapon and that the officer was at risk of harm. The officer was not acting on a hunch. Therefore, it was reasonable in these circumstances for Shepherd to order the passenger to the front of the vehicle as well as the defendant. The defendant was positioned in the driver seat; without his removal from the vehicle, it is reasonable to believe that there may have been objects in the passenger compartment of the vehicle that could cause harm. It is also reasonable to believe that the

defendant could start the vehicle and cause it to strike the officer during the investigation of the passenger while in front of it.

{¶ 10} After concluding that it was reasonable for Officer Shepherd to order Seymour and Hurtt to step out of his vehicle and move to the front of the vehicle, the trial court considered whether Officer Shepherd had reasonable suspicion to further detain Hurtt:

> The tip in this case was from an anonymous informant and required independent police corroboration.
>
> Shepherd arrived at the location in question. He observed a vehicle parked in that location matching the description provided and that it had two occupants. He also determined that the license plate or registration did not correspond to a nearby address. The independent corroboration of this information lends some reliability to the tip provided, although of limited weight. Nevertheless, Shepherd's arrival and initiation of contact with the vehicle was as a consensual encounter and not subject to Fourth Amendment restrictions.
>
> The incident occurred at 12:10 am on or about the July 4 holiday. The officer did not initiate his overhead lights. Upon the officer's arrival, the passenger exited the vehicle and began searching the trunk causing concern for officer safety. Upon contact with the passenger, Shepherd detected several indicators that the passenger was under the influence. The

defendant had bloodshot eyes. It was reasonable for Shepherd for inspect

what might be in open view within the vehicle for evidence of illegal

substances, paraphernalia, or drug abuse instruments. Shepherd saw in

open view an upside down soda can with liquid residue in the base which

he knew from his training and experience to be consistent with heroin use.

{¶ 11} Thereafter, Hurtt pleaded no contest to the charge; and the trial court

issued a finding of guilt. He was immediately sentenced to two days in jail, one year of

community control, and a $50 fine plus court costs.

{¶ 12} He timely appeals.

## II. Assignment of Error

{¶ 13} Hurtt assigns the following error for our review:

The trial court erred in overruling Ryan C. Hurtt's Motion to Suppress, in
violation of the Fourth Amendment to the United States Constitution, and
Article 1, Section 14 of the Ohio Constitution. (Oct. 4, 2016 Suppression
Hearing Tr. p. 2-5, 7, 9, 12, 13, and 15; Nov. 30, 2016 Entry).

## III. Law and Analysis

{¶ 14} In his sole assignment of error, Hurtt argues that his encounter with

Officer Shepherd constituted an illegal investigative stop. Specifically, he contends that

the anonymous tip, coupled with Seymour's actions, was insufficient to establish

reasonable suspicion that he was engaged in criminal activity.

{¶ 15} Appellate review of a trial court's ruling on a motion to suppress is "a

mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372,

797 N.E.2d 71, ¶ 8. When considering a motion to suppress, the trial court assumes the

role of the trier of fact and is therefore in the best position to resolve factual questions

and evaluate the credibility of the witnesses. *State v. Roberts,* 110 Ohio St.3d 71, 2006–

Ohio–3665, 850 N.E.2d 1168, ¶ 100, citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582

N.E.2d 972 (1992). Consequently, in its review, an appellate court must accept the trial

court's findings of fact if they are supported by competent, credible evidence. *State v.*

*Belton*, 149 Ohio St.3d 165, 2016-Ohio-1581, 74 N.E.3d 319, ¶ 100; *State v.*

*Landrum,* 137 Ohio App.3d 718, 722, 739 N.E.2d 1159 (4th Dist.2000). However, an

appellate court determines as a matter of law, without deferring to the trial court's

conclusions, whether the trial court reached the correct legal conclusion in analyzing the

facts of the case. *Belton* at ¶ 100; *Roberts* at ¶ 100; *Burnside* at ¶ 8.

{¶ 16} "The Fourth Amendment to the United States Constitution and the Ohio

Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v.*

*Emerson*, 134 Ohio St.3d 191, 2012–Ohio–5047, 981 N.E.2d 787, ¶ 15. This

constitutional guarantee is protected by the exclusionary rule, which mandates the

exclusion of the evidence obtained from the unreasonable search and seizure at trial. *Id*.

{¶ 17} The Supreme Court of the United States recognizes three types of police-

citizen interactions: (1) a consensual encounter, which requires no objective suspicion;

(2) a brief, investigatory stop or detention, which must be supported by a reasonable,

articulable suspicion of criminal activity; and (3) an arrest, which must be supported by

probable cause. *United States v. Williams*, 525 Fed.Appx. 330, 332 (6th Cir.2013);

*Florida v. Royer*, 460 U.S. 491, 501–507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United*

*States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 553, 100 S.Ct. 1870, 64 L.Ed.2d 497

(1980).

{¶ 18} When a police officer merely approaches a person in a public place,

engages the person in conversation, requests information, and the person is free to decline

to answer and walk away, the encounter is considered consensual and not subject to Fourth Amendment protection. *State v. Blankenship,* 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, ¶ 11, citing *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). No Fourth Amendment rights are invoked with a consensual encounter because there is no seizure. *Id.*, citing *Bostick* at 434.

{¶ 19} Conversely, a seizure occurs when, in view of all of the circumstances surrounding the incident, the police officer has either by physical force or a show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests and walk away or otherwise terminate the encounter. *State v. Travis,* 4th Dist. Scioto No. 06CA3098, 2008-Ohio-1042*, ¶ 10,* citing *State v. Williams,* 51 Ohio St.3d 58, 554 N.E.2d 108 (1990). "While no 'litmus-paper test [exists] for distinguishing a consensual encounter from a seizure,' * * * certain factors may indicate that a seizure has occurred." *Blankenship* at ¶ 13, quoting *Royer* at 506. Factors to consider in determining whether a seizure has occurred include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); *see also Blakenship* at ¶ 13 (listing additional factors to consider).

{¶ 20} When Officer Shepherd arrived on scene, he parked his cruiser behind a vehicle matching the caller's description. He activated his cruiser's spotlight and approached the vehicle with his handheld flashlight. This does not constitute a seizure under the Fourth Amendment. *E.g.*, *State v. Carter*, 2d Dist. Montgomery No. 19833,

2004-Ohio-454, 19 (No seizure where two police officers approached defendant's car and used cruiser spotlight to illuminate it); *State v. Schwab*, 12th Dist. Clermont No. CA2000-07-055, 2001 WL 88198, *3 (no seizure where officer shined the spotlight into parked vehicle, parked at an angle behind the vehicle, and began to approach it).

{¶ 21} However, when Seymour exited the vehicle and began looking through the trunk, Officer Shepherd immediately ordered Seymour, who was standing outside the vehicle, and Hurtt, who was sitting in the driver's seat, to step to the front of the vehicle, for officer safety. This constitutes a seizure under the Fourth Amendment. *E.g., State v. Cosby,* 2d Dist. Montgomery No. 22293, 2008-Ohio-3862, ¶ 15 (deputy's command to defendant to stop and wait constituted a seizure of defendant's person); *State v. Kinkopf,* 11th Dist. Lake No. 99-L-034, 2000 WL 757736, *4 (June 9, 2000) (seizure occurred after officer approached parked vehicle and ordered defendant to step out).

{¶ 22} The State argues that our decision in *Blankenship* supports the opposite conclusion. There, a Chillicothe police officer was on routine patrol when he observed Blankenship making a hand-to-hand transaction with the passenger of a vehicle in a parking lot. *Blankenship,* 2014-Ohio-3600, at ¶ 4. Knowing that the area was one of high-crime, the officer approached Blankenship and the passenger and asked them a few questions. *Id.* Blankenship appeared very nervous and refused to make eye contact with the officer. *Id.* The officer told Blankenship to "step over here" so he could talk to Blankenship alone. *Id.* The two stepped away, where the officer asked Blankenship if anything illegal was going on. *Id.* Blankenship indicated that he had cocaine in his pocket. *Id.*

{¶ 23} On review, we concluded that the encounter between the officer and Blankenship was consensual because the trial court concluded that the officer's statement to Blankenship to "step over here" did not turn the encounter into a seizure. *Id*. at ¶ 23-25. In doing so, we emphasized that the trial court found that the officer phrased his statement as a request. *Id*.

{¶ 24} Unlike *Blankenship*, the trial court in this case found that Officer Shepherd phrased his statement to Hurtt directing him to get out of the vehicle and move to the front of the vehicle as an order. "[B]ecause so much of the meaning of [an officer's] comment is carried in the tone of voice of the person making it," we generally defer to the trial court's characterization of the comment. *Id.* at ¶ 14, quoting *In re Nesser*, 4th Dist. Ross No. 00CA2551, 2000 WL 33226180, *3 (December 1, 2000).

{¶ 25} Moreover, there is nothing in the record to support the State's contention that the encounter was consensual. For instance, there was no testimony that Officer Shepherd asked Hurtt any questions or otherwise engaged him prior to having him step out of the vehicle and move to the front of the vehicle. *E.g.*, *State v. Wintermeyer*, 2017-Ohio-5521, --- N.E.2d ----, ¶ 22 (10th Dist.) (no evidence to support a consensual encounter where officer detained defendant and took plastic baggie out of his hands without asking defendant any questions or engaging him in conversation beforehand).

{¶ 26} Having determined that Officer Shepherd's initial encounter with Hurtt constituted a seizure, we next consider whether his seizure was proper under the Fourth Amendment.

{¶ 27} "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures." *State v.*

*Emerson*, 134 Ohio St.3d 191, 2012–Ohio–5047, 981 N.E.2d 787, ¶ 15. This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial. *Id*.

{¶ 28} "An officer may conduct a limited search of a person for weapons if the officer has reasonable concern for personal or public safety. Society recognizes the need to protect officers who are engaged in investigations." (Citations omitted.) *State v. Shrewsbury*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, ¶ 23. "When issues of an officer's safety arise and are supported by articulable facts, courts should not scrutinize the claim too critically, nor should they second guess an officer in a close case. (Citations omitted.) *Id.* at ¶ 24.

{¶ 29} Here, the anonymous tip, by itself, is insufficient to justify Hurtt's search and seizure because it provided only general descriptive information about a vehicle that the caller perceived to be suspicious and did not allege that the occupants were engaging in unlawful conduct or provide predictive information about unlawful conduct that the occupants were about to commit. *E.g., State v. Shepherd,* 5th Dist. Coshocton Nos. 2014CA0003, 2014CA0009, 2014-Ohio-4611, ¶¶ 25-26 (anonymous tip of suspicious blue van in driveway does not support a reasonable suspicion of criminal activity); *State v. Anderson*, 11th Dist. Geauga No. 2003-G-2540, 2004-Ohio-3192, ¶¶ 13-14 (anonymous tip that suspicious blue car with male driver was traveling in area did not justify investigatory stop of defendant who was driving blue car where tip did not include any other details about car, informant's statement that blue car was suspicious was conclusion made by informant, and deputy merely verified that there was blue car traveling in area and did not observe any traffic violations or any other grounds for stop);

*Bowling Green v. Tomor,* 6th Dist. Wood No. WD–02–012, 2002–Ohio–6366, ¶ 11

(anonymous tip of suspicious vehicle did not amount to reasonable suspicion even though

it was late at night and the officer had knowledge of recent thefts in the area because

officer did not know the identity of the informant or the facts the informant used to report

a suspicious vehicle). *See generally Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110

L.Ed. 301 (1990) (explaining differences between an anonymous tip containing details

relating to easily obtained facts and conditions existing at the time of the tip and an

anonymous tip containing details relating to future actions of third parties ordinarily not

easily predicted).

{¶ 30} However, after corroborating the tip's limited details, Officer Shepherd

activated his cruiser's spotlight and approached the vehicle, alone. Around that time,

Seymour exited the vehicle and began looking through the trunk, causing Officer

Shepherd concern for his safety. *See, e.g.*, *State v. Massey*, 10th Dist. Franklin No. 12AP-

649, 2013-Ohio-1521, ¶ 32 (noting that appellant's act of leaning down toward the floor

of vehicle as officer was approaching to investigate supported reasonable-suspicion

determination). *See generally State v. Alexander-Lindsey*, 2016-Ohio-3033, 65 N.E.3d

129, ¶ 24 (defendant's movements, such as furtive gestures, can be considered in

analyzing whether a police officer had reasonable suspicion to justify an investigative

stop).

{¶ 31} Under the totality of the circumstances, a reasonable officer could

believe that Seymour may have been reaching for a weapon and that Hurtt may

have had access to that weapon (or another weapon) from inside the passenger

compartment. Since a reasonably prudent person in this situation would have been

justified in believing that his safety was compromised, Hurtt's search and seizure was lawful. *State v. Imani*, 2017-Ohio-8113, --- N.E.3d ----, ¶¶ 29-30 (5th Dist.) (officer lawfully patted down defendant where defendant exited lawfully-parked vehicle and began behaving erratically as officer approached vehicle and defendant ignored several requests by officer to stop and to show his hands); *Shewsbury*, 2014-Ohio-716, ¶¶ 24-26 (order instructing defendant to place his hands on the steering wheel and to disclose what he held was objectively reasonable in nature and scope where defendant reached down after officers approached vehicle and identified themselves).

### IV. Conclusion

{¶ 32} Accordingly, we overrule Hurtt's sole assignment of error and affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

Abele, J., Concurring:

{¶ 33} While I agree with the principal opinion, I believe that another reasonable basis existed for the officer's contact with the appellant and his passenger. Police officers have a duty to assist stranded motorists or disabled vehicles. Here, in view of the lateness of the hour (after midnight), the fact that the car was not registered to any person who lived in the neighborhood, and the length of time that the driver and passenger sat stationary in the parked vehicle, a reasonable person would have cause to believe that the vehicle did not function properly. When police inquire in this type of situation, courts have determined that an officer acts pursuant to the community caretaking function. See, e.g., *State v. Glasser*, 9th App. Dist. 13CA0042, 2014-Ohio-2569. Here the lone officer approached the vehicle and observed that the passenger had exited the vehicle and appeared to be looking for something in the trunk compartment. In light of the totality of these circumstances, it was reasonable for officer safety to require both occupants to simply move to an area near the front of the vehicle. Under these circumstances, it would be unreasonable to ask a lone officer late at night to have contact with the individual looking through the trunk compartment while the driver sat obscured in the driver's seat and would have unlimited access to any item in the passenger compartment.

Hoover, P.J., Dissenting:

{¶ 34} I respectfully dissent from the per curiam opinion because I believe that Hurtt's seizure was improper under the Fourth Amendment.

{¶ 35} The "investigative stop" exception to the Fourth Amendment warrant requirement allows a police officer to temporarily detain a person for the limited purpose of investigating suspected criminal behavior. *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). While an investigative stop constitutes a seizure, it does not violate the Fourth Amendment as long as the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal activity "may be afoot" (i.e., that a person has committed or is about to commit a crime.) *State v. Abernathy,* 4th Dist. Scioto No. 07CA3160, 2008-Ohio-2949, ¶¶ 22-24, quoting *Terry v. Ohio,* 392. U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

{¶ 36} " 'The propriety of an investigative stop by a police officer must be viewed in light of the totality of the surrounding circumstances.' " *Eatmon*, 2013-Ohio-4812, at ¶ 13, quoting *State v. Freeman*, 64 Ohio St.2d 291, 414 N.E.2d 1044 (1980), paragraph one of the syllabus. The totality of the circumstances approach "allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " *Arvizu* at 273, quoting *U.S. v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981).

{¶ 37} It is well-settled that furtive movements can support a reasonable-suspicion determination. *E.g.*, *State v. Alexander-Lindsey*, 4th Dist. Lawrence No. 15CA11, 2016-Ohio-3033, ¶ 24 (furtive gestures can be considered in analyzing whether

a police officer had reasonable suspicion); *State v. Jennings*, 2013-Ohio-2736, 993

N.E.2d 868, ¶ 18 (10th Dist.) (defendant's movements, such as furtive gestures, can also

be considered in analyzing whether police officers had reasonable suspicion); *State v.*

*Abner*, 194 Ohio App.3d 523, 2011-Ohio-4007, 957 N.E.2d 72, ¶ 12 (2d Dist.)

(defendant's movements, such as furtive gestures, can be considered in analyzing

whether police officers had enough to amount to a reasonable suspicion of danger).

However, a furtive movement, by itself, is insufficient. *E.g.*, *State v. Caplinger*, 5th Dist.

Muskingum No. CT2013-0018, 2013-Ohio-5675, ¶ 18 (furtive movement, standing

alone, insufficient to justify investigative stop); *State v. Armstrong*, 103 Ohio App.3d

416, 422, 659 N.E.2d 844 (a mere furtive movement, standing alone, does not establish

reasonable suspicion to stop a person).

{¶ 38} While Officer Shepherd testified that he ordered Seymour and Hurtt to the

front of the car for officer safety after Seymour exited the vehicle and begin looking

through the trunk, he never articulated why his observations led him to suspect that

Seymour may be reaching for a weapon. In other words, he did not discuss any prior

experiences or training which supported the belief that a person looking through the trunk

of a vehicle is reaching for a weapon. For instance, there was no testimony that previous

weapon-related offenses that occurred in the area or that the area was a high crime area.

*E.g., State v. Atchley*, 10th Dist. Franklin No. 07AP–412, 2007–Ohio–7009 (high crime

area, furtive movements, and nervous appearance gave officer reasonable suspicion

sufficient to justify an investigative stop); *State v. McGary*, 11th Dist. Trumbull No.

2006–T–0127, 2007–Ohio–4766 (high crime area coupled with furtive gesture of

reaching toward floor of the vehicle supports reasonable and articulable suspicion.); *State*

*v. Nelms*, 10th Dist. Franklin Nos. 06AP-1193, 06AP-1194, 2007-Ohio-4664, ¶¶ 17-18 (officer had reasonable suspicion to stop defendant after he got out of the car where area had been the site of prior arrests for drug and weapons violations; defendant and other occupants behaved in a suspicious manner, each reaching down toward the floor of the vehicle out of the officer's line of sight; and officer smelled marijuana coming from the car).

{¶ 39} Even more concerning, Officer Shepherd testified that he could not recall at what point Seymour exited the vehicle and began looking through the trunk. Specifically, he could not recall "if [he] saw [Seymour] getting out of the vehicle or if [Seymour] was already in the trunk" when he arrived. (Mot. to Supp. Hrg., p. 9). In other words, it is entirely possible that Seymour was already looking through the trunk of the vehicle when Officer Shepherd arrived. *See U.S. v. Castle*, 825 F.3d 625, 629 (D.C.Cir.2016) (in the context of a reasonable, articulable suspicion analysis, furtive gestures are significant only if undertaken in response to police presence).

{¶ 40} I find it necessary to note that although I concurred in judgment and opinion in *State v. Shrewsbury*, 4th Dist. Ross No. 13CA3402, 2014-Ohio-716, this case is distinguishable on its facts from *Shrewsbury*. In *Shrewsbury*, the law enforcement officer had observed a hand-to-hand transaction occur that is common with a drug transaction; and the officer had also viewed Shrewsbury drinking from a beer, a possible open-container violation. In other words, reasonable suspicion or criminal activity could justify the officer's actions in *Shrewsbury*.

{¶ 41} While I appreciate the risks posed to law enforcement officers that investigate suspicious circumstances, I do not believe that the testimony elicited at the suppression hearing supports Hurtt's search and seizure.

{¶ 42} Accordingly, I would sustain Hurtt's assignment of error and reverse the judgment of the trial court.

## <u>JUDGMENT ENTRY</u>

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs.

The Court finds that reasonable grounds existed for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J.: Concurs in Judgment and Opinion.
Abele, J.: Concurs in Judgment and Opinion with Opinion.
Hoover, P.J.: Dissents with Dissenting Opinion.

For the Court,

By: _____
          Matthew W. McFarland, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.