[Cite as *State v. Richardson*, 2021-Ohio-2751.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-200187 |
| | | TRIAL NO. B-1906312B |
| Plaintiff-Appellee, | : | |
| | | |
| vs. | : | *O P I N I O N.* |
| | | |
| WILLIAM RICHARDSON, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  August 11, 2021

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *H. Keith Sauter*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Matthew S. Schuh*, for Defendant-Appellant.

**WINKLER, Judge**.

{¶1} After pleading no contest, defendant-appellant William Richardson was convicted of one count of possession of drugs under R.C. 2925.11(A) and one count of illegal use or possession of drug paraphernalia under R.C. 2925.14(C)(1). He now appeals those convictions. We find no merit in his sole assignment of error, and we affirm the trial court's judgment.

{¶2} The record shows that Norwood police officers Ryan Harrison and Nathan Fornash were dispatched to 2744 Norwood Avenue for what Officer Harrison described as "family trouble." Officer Fornash stated that the cause of the disturbance was Theodore Steinle. Steinle's mother had called police asking them to talk to him and get him off the property.

{¶3} When the officers arrived, Steinle's mother directed them to the back of the house where they saw two men standing next to a car in the driveway and talking. Officer Fornash approached one of the men, who identified himself as Steinle. Steinle provided Officer Fornash with his identification, which revealed that Steinle had open warrants. Officer Fornash arrested him. While searching Steinle, the officer discovered what appeared to be methamphetamine in Steinle's possession.

{¶4} While Officer Fornash was searching Steinle, Officer Harrison noticed Richardson "moving to the opposite side of the car" and "making some strange movements." Officer Harrison stated, "He kind of went to an angle that we couldn't see him very well. He dipped down and started reaching down towards the ground." At that point, Officer Harrison, who had been an officer for nine years and had made approximately 100 drug arrests per year, was "very suspicious" that Richardson possessed drugs.

{¶5} When Richardson came back around the car to approach Officer Harrison, the officer asked Richardson if he had anything illegal on his person. He stated that although he did not remember Richardson's exact words, he said something along the lines of "I don't have anything on me, you can search." Richardson opened his coat pockets and took out "a couple of things." According to Officer Harrison, Richardson put his hands on the trunk of the car and "kind of stepped back and took a side stance with his feet. It's kind of what's depicted in the movies, as you would see a police officer search somebody." When the officer searched Richardson, he found a baggie of methamphetamine and drug paraphernalia.

{¶6} While dealing with Steinle, Officer Fornash heard Officer Harrison ask Richardson if he had "anything on him" and Richardson said that he did not. Although Officer Fornash could not "remember verbatim the actual words that were used," he stated that Richardson "gave consent" for the search.

{¶7} The entire encounter was captured on Officer Harrison's body camera, and the trial court reviewed the recording. The video portion was clear, but noise from the wind and traffic from a nearby highway drowned out most of the audio recording, except for Officer Harrison's voice.

{¶8} The video showed that as the officers approached the two men, Richardson started to walk away until Officer Fornash said, "Where are you going big man? Come on over here." In response, Richardson walked back toward the officers. He stood next to Officer Harrison while Officer Fornash spoke with Steinle. Officer Fornash then handed Officer Harrison something that "looked like meth."

{¶9} A short time later, Officer Harrison asked Richardson, "Buddy you got anything on you?" Richardson shook his head and said "No, sir." He then put his hands in his pockets and took out two objects. Officer Harrison told him to "keep your hands out of your pockets, put your hands on the hood." Officer Harrison began searching his coat pockets and asked, "Do you got anything?" Richardson said, "No sir."

{¶10} Subsequently, Richardson attempted to turn around, hunched over, and put his hands above his head. Officer Harrison said, "What in the world? What are you—just put your hands on the car, what are you doing?" Officer Harrison then asked him, "When's the last time you did meth?" Richardson's response was not entirely audible, but he could be heard saying, "I don't have anything." Officer Harrison replied, "That's what he said, too," referring to Steinle.

{¶11} The officer continued to search Richardson, and Richardson again removed his hands from the hood of the car. Officer Harrison said, "If the hands come off again, you're going in handcuffs." Eventually, the officer reached in Richardson's pants pocket and found a baggie. He asked Richardson, "What's in here?" He then placed Richardson under arrest.

{¶12} In his sole assignment of error, Richardson contends that the trial court erred in overruling his motion to suppress. He argues that his initial detention was unsupported by reasonable suspicion, that the search of his person was unjustified because there was no evidence that the investigating police officers thought that he was armed and dangerous, and that the evidence did not support the trial court's finding that he consented to the search. This assignment of error is not well taken.

{¶13} Appellate review of a motion to suppress presents a mixed question of law and fact. We must accept the trial court's findings of fact as true if competent, credible evidence supports them. But we must independently determine whether the facts satisfy the applicable legal standard. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8; *State v. Sweeten*, 1st Dist. Hamilton No. C-150583, 2016-Ohio-5828, ¶ 8.

{¶14} First, Richardson argues that his initial detention was improper because the officers did not have a reasonable and articulable suspicion that he had engaged in criminal activity. The United States Supreme Court has held that a seizure does not occur simply because a police officer approaches an individual and asks a few questions. So long as a reasonable person would feel free to leave or go about his or her business, the encounter is consensual and no reasonable suspicion is required. *Florida v. Bostick*, 501 U.S. 429, 434, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991); *State v. Lyle*, 1st Dist. Hamilton No. C-190447, 2020-Ohio-4683, ¶ 22-23; *State v. Black*, 1st Dist. Hamilton No. C-970874, 1998 WL 906351, *1 (Dec. 31, 1998).

{¶15} Simply because most people do respond to a police request without being told they are free not to respond does not eliminate the consensual nature of the response. *Immigration & Naturalization Serv. v. Delgado*, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); *State v. Daniel*, 81 Ohio App.3d 325, 328, 610 N.E.2d 1099 (9th Dist.1992); *Black* at *1. "Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." *Bostick* at 434, quoting *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whether a seizure has occurred is a question of fact to be determined from the totality of the circumstances.

*Michigan v. Chesternut*, 486 U.S. 567, 573, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988); *State v. Hummons*, 1st Dist. Hamilton No. C-950747, 1996 WL 526697, *2 (Sept. 18, 1996).

{¶16} The officers were lawfully at the residence to investigate a domestic disturbance, and they were directed to go to the back of the house. They saw two men in the yard, and they did not know who the men were or which one was the subject of the call to the police. They wanted to ascertain their identities.

{¶17} Richardson contends that as he was walking away, Officer Fornash ordered him to come back, stating, "Where are you going big man? Come over here." He argues that those statements were a show of authority and that a reasonable person would not have felt free to leave under those circumstances.

{¶18} Courts have held that an imperative or declarative statement, by itself, does not transform a consensual encounter into a seizure. *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, ¶ 16. Instead, courts must examine the circumstances in each case to determine whether an imperative or declarative statement constitutes a sufficient show of force to change a consensual encounter into a seizure. *Id.*

{¶19} Although Officer Fornash told Richardson to come over to him rather than asking him to do so, none of the other facts and circumstances demonstrate a show of authority sufficient to turn a consensual encounter into a seizure. Richardson was not attempting to flee the scene. He did not walk toward the driveway, but instead was walking to the back of the enclosed backyard. Officer Fornash's statement was not threatening or intimidating. He used a conversational tone of voice and did not threaten any consequences if Richardson did not comply.

Richardson never expressed any desire to stop the encounter. The officers did not chase Richardson or block his path. They did not brandish weapons or otherwise indicate that he was not free to leave. Consequently, the trial court's finding that the initial encounter was consensual was supported by competent, credible evidence. *See Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, ¶ 16-20; *State v. Duncan*, 9th Dist. Summit No. 21155, 2003-Ohio-241, ¶ 13-16.

{¶20} Next, Richardson argues that the subsequent search of his person violated his Fourth Amendment rights because the evidence did not show that he consented to the search, and the officers went beyond the permissible scope of a limited search for weapons under *Terry*, 392 U.S. 1, 18-19, 88 S.Ct. 1868, 20 L.Ed.2d 889. "But police officers do not need a warrant, probable cause, or even a reasonable, articulable suspicion to conduct a search when a suspect voluntarily consents to the search." *State v. Riggins*, 1st Dist. Hamilton No. C-030626, 2004-Ohio-4247, ¶ 11.

{¶21} Where the state relies upon consent to justify a warrantless search, it bears the burden to show that consent was freely and voluntarily given. *Schneckloth v. Bustamante*, 412 U.S. 218, 222, 93 S.Ct. 2041, 36 L.E.2d 854 (1973); *State v. Smith*, 1st Dist. Hamilton No. C-061032, 2007-Ohio-3786, ¶ 13. Whether consent was voluntary or was the product of duress or coercion is a question of fact that a court must determine from the totality of the facts and circumstances. *Schneckloth* at 248-249; *Smith* at ¶ 13; *Riggins* at ¶ 14. Police officers need not warn an individual of the right to refuse consent. *State v. Robinette*, 80 Ohio St.3d 234, 242, 685 N.E.2d 762 (1997); *State v. Davis*, 1st Dist. Hamilton No. C-040818, 2005-Ohio-4139, ¶ 10.

{¶22} The state presented evidence to show that Richardson had consented to the search. Officer Harrison testified that he had asked Richardson if he had anything illegal on him. Richardson responded that he did not and said, "You can search." Officer Harrison described him as "more than compliant." He voluntarily took objects out of his coat pockets and assumed a stance that would facilitate the search. Though the audio portion of the recording was hard to hear, Richardson's actions and body language supported the police officers' testimony that he consented to the search.

{¶23} Richardson points out that the video recording shows that when Richardson put his hand in his pocket, Officer Harrison stated, "Keep your hands out of your pockets, put your hands on the hood." Subsequently, Richardson started moving around and Officer Harrison said, "What in the world? What are you – Just put your hands on the car, what are you doing?" Richardson argues that those commands cannot be reconciled with a finding that the search was consensual.

{¶24} We disagree. In *Davis*, 1st Dist. Hamilton No. C-040818, 2005-Ohio-4139, at ¶ 15, we stated that where a police officer made a similar command, the defendant's consent was still valid. "Such a command would not have constituted an illegal seizure. A reasonable person would have understood that an officer's safety concerns required the vehicle's occupants' hands to be in plain view * * *."

{¶25} Once Richardson had given his consent to search, Officer Harrison was justified in ensuring that the search was done safely. Nothing in the testimony or the video recording showed that Richardson had revoked or limited his consent or was submitting to the search against his will. *See Riggins*, 1st Dist. Hamilton No. C-

030626, 2004-Ohio-4247, at ¶ 26; *State v. Chapman*, 97 Ohio App.3d 687, 691, 647 N.E.2d 504 (1st Dist.1994).

{¶26} The issue came down to credibility. In a hearing on a motion to suppress, matters as to credibility are for the trier of fact to decide. *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982); *Smith*, 1st Dist. Hamilton No. C-061032, 2007-Ohio-3786, at ¶ 25. After considering all the evidence, the trial court believed the officers' testimony that the search was consensual. We cannot say that the trial court's determination that the search was consensual was contrary to law or against the manifest weight of the evidence. *See Chapman* at 691-692. Consequently, we overrule Richardson's assignment of error and affirm the trial court's judgment.

Judgment affirmed.

**ZAYAS, P.J.**, and **CROUSE, J.**, concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.