[Cite as *State v. Nichols*, 2020-Ohio-6960.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff - Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | |
| DAVID NICHOLS | : | Case No. 2020 CA 0027 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:         Appeal from the Richland County
                                 Court of Common Pleas, Case No.
                                 2019-CR-231


JUDGMENT:                        Affirmed


DATE OF JUDGMENT:                December 29, 2020


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

GARY BISHOP                               DARIN AVERY
Prosecuting Attorney                      105 Sturges Avenue
Richland County                           Mansfield, Ohio 44903


JOSEPH C. SNYDER
Assistant Prosecuting Attorney
38 South Park Street
Mansfield, Ohio 44902

*Baldwin, J.*

{¶1} Defendant-appellant David Nichols appeals from the partial denial by the Richland County Court of Common Pleas of his Motion to Suppress. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On March 8, 2019, the Richland County Grand Jury indicted appellant on one count of possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a), a felony of the fifth degree. At his arraignment, appellant entered a plea of not guilty to the charge.

{¶3} Appellant filed a Motion to Suppress on August 7, 2019, seeking to suppress statements made by appellant. Appellant also sought to suppress evidence seized as a result of the search of his person and the truck which he had been in.  A hearing on the motion was held on September 4, 2019.

{¶4} Deputy Bryce Ernsberger of the Richland County Sheriff's Office testified that he was on duty on August 24, 2018 and was working from 2:00 p.m. to 10:00 p.m. He testified that he pulled into a parking lot of a market after he ran a license plate on a truck in the parking lot and the learned that the owner of the vehicle, Brinda Nichols, had an outstanding warrant for failure to appear.   Brinda Nichols was in the passenger seat of the truck. Deputy Ernsberger had her step out of the truck and searched her before arresting her. He testified that no contraband was found in her purse, but that he did find an empty baggie consistent with the packaging of drugs.

{¶5} After arresting Brinda Nichols, the Deputy made contact with appellant, who was standing about 20 or 30 feet from the truck. Appellant had been in the driver's seat and while Brinda was being searched, had walked over to the market. Deputy Ernsberger

testified that while his body camera was on at the point, the audio was not recording because he either bumped it or turned it off, but did not recall.  He testified that he questioned appellant when he initially made contact with appellant and Brinda because appellant had been fidgeting around in the truck, and was "[c]ontinually moving his hands around the truck, making me believe something might be illegal in the truck." Transcript at 10. Appellant, when asked what was in the truck, told the Deputy that there was a crack pipe in the ashtray in the middle of the truck.

{¶6}    The Deputy then searched the truck and located the crack pipe in the ashtray and three baggies of what appeared to be cocaine in the center console. Appellant told the Deputy that the substance in the bag was his and his wife's  cocaine but later said that the cocaine was his.   The Deputy testified that the audio portion of the body camera stopped when he walked from his cruiser up to appellant when appellant was standing near the market  and then after he was placed in the cruiser. He testified that he did not realize that the audio was not recording during his conversation with appellant until several days later.

{¶7}    On cross-examination, Deputy Ernsberger testified that Brinda Nichols matched his description of the owner of the vehicle.  He testified that appellant got out of the truck as he was arresting Brinda Nichols and left the immediate area and that he only approached appellant again after he found the empty baggie in Brinda's purse.

{¶8}    Deputy Ernsberger testified that he did not recall purposefully muting his body camera. He testified that when he was dealing with Brinda Nichols, he did not think that he had a reason to keep appellant there at that time.   After finding the baggie, he re-approached appellant. The audio was off at the time.   He testified that he put appellant

into his cruiser but did not *Mirandize* him at any time. When asked whether he then searched the truck without permission, the Deputy testified that appellant had advised that there was an illegal item in the truck, so he had probable cause at that time.

{¶9}   On redirect, Deputy Ernsberger testified that once appellant told him that the crack pipe was in the ashtray, appellant was not under arrest at that time. He testified that he had not made up his mind that he was going to arrest appellant once told of the crack pipe. He testified that appellant told him of the crack pipe before they even walked over to appellant's truck. He testified that was when it changed to a detention.

{¶10}  Appellant testified that on August 24, 2018, he and his wife were sitting in a parking lot at a corner market when Deputy Ernsberger arrested his wife. He testified that they were sitting in the parking lot while his wife rolled cigarettes for him. Appellant testified that he left the truck and went into the market and that when he came out, Deputy Ernsberger called over to him. He did not recall telling the Deputy that there was a crack pipe in the truck. Appellant testified that the Deputy did not ask if he could search appellant's person and that when the Deputy had him get up against the truck, he did not feel that he could leave the area. He also testified that he did not give permission for the truck to be searched.

{¶11}  On cross-examination, appellant testified that his wife had been the driver of the truck and that they switched seats so that she could roll cigarettes for him. He testified that as his wife was getting arrested, he went into the market to buy cigarettes. He testified that he probably could have stayed in the market, but the Deputy called him back over and told him to "Come here". Transcript at 33.  The Deputy never went into the market. Appellant testified that he was going to have to walk home once his wife was

arrested.  Appellant testified that he complied with the Deputy's order because he did not know that he had the right to refuse to talk to him. He denied telling the Deputy that there was a crack pipe in the truck and denied admitting to the Deputy that he had smoked crack a couple of hours before or that the baggies had contained cocaine. He denied voluntarily talking to the Deputy. Appellant did not recall saying that the cocaine was his.

**{¶12}** On redirect, appellant testified that he did not feel that he could walk away when Deputy Ernsberger called him over or when he was searched. He testified that he was never Mirandized.

**{¶13}** The trial court, pursuant to a Judgment Entry filed on September 26, 2019, overruled appellant's Motion to Suppress the evidence located in the truck, finding that the Deputy had probable cause to search the same. The trial court ordered that any statements that appellant made while in the back of the police cruiser be suppressed since appellant was never Mirandized.

**{¶14}** Thereafter, appellant pled no contest to the charge and was, on February 5, 2020, sentenced to 24 months of community control and fined $250.00.

**{¶15}** Appellant now raises the following assignment of error on appeal:

**{¶16}** "I. THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS THE FRUITS OF THE ILLEGAL SEIZURE OF THE DEFENDANT AND SEARCH OF HIS VEHICLE AND PERSON."

I

**{¶17}** Appellant, in his sole assignment of error, argues that the trial court erred in refusing to suppress the fruits of the illegal seizure of appellant and the search of his vehicle and person.  We disagree.

**{¶18}** Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 1996-Ohio-134, 661 N.E.2d 1030. A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 41, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

**{¶19}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See Williams, supra.* Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's

conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

**{¶20}** Appellant initially argues that he was illegally seized by the Deputy. Appellant argues that the Deputy's order to him to "come here" when the Deputy was wearing a uniform and had arrested a fellow vehicle passenger constituted a seizure for Fourth Amendment purposes.

**{¶21}** The Fourth Amendment to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, prohibits unreasonable searches and seizures. *State v. Kinney,* 83 Ohio St.3d 85, 87, 1998–Ohio–425; *Katz v. United States* (1967), 389 U.S. 347, 351, 88 S.Ct. 507, 511. However, "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred" within the meaning of the Fourth Amendment. *Terry v. Ohio* , 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, fn. 16 (1968).Even when a law enforcement [officer] phrases a statement in an imperative or declarative—rather than in an interrogative—fashion, courts have generally ruled that an imperative or declarative statement, by itself, does not transform a consensual encounter into a seizure." *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, 2014 WL 4161479, ¶ 16, citing *Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, 2012 WL 353764, *State v. Duncan*, 9th Dist. Summit No. 21155, 2003-Ohio-241, 2003 WL 150091, and *United States v. Brown*, 447 Fed.Appx. 706, 708–709 (6th Cir.2012). "Instead, courts  must examine the totality of the circumstances present in each case in order to ascertain whether an imperative or declarative statement constitutes a

sufficient show of authority to ripen a consensual encounter into a seizure subject to Fourth Amendment scrutiny." (Citation omitted.) *Id.*

**{¶22}** In *State v. Smith*, 45 Ohio St.3d 255, 544 N.E.2d 239 (1989), the Supreme Court of Ohio held that a consensual encounter did not ripen into a seizure when an officer stated "hey, come here a minute," to the defendant, and none of the officers on the scene displayed any weapons, physically touched the defendant, used a threatening tone of voice, ordered the defendant into the police cruiser, indicated that the defendant's noncompliance would lead to his arrest, or block the defendant's exit with their cruiser. *Id.* at 258–259, 544 N.E.2d 239, *reversed on other grounds*, *Smith v. Ohio*, 494 U.S. 541, 110 S.Ct. 1288, 108 L.Ed.2d 464 (1990).

**{¶23}** Likewise,  in *Columbus v. Body*, 10th Dist. Franklin No. 11AP-609, 2012-Ohio-379, 2012 WL 353764, the Tenth District Court of Appeals determined that an officer's statement "come over here," did not constitute a seizure under circumstances where the officer acted without the threatening presence of several officers, did not activate his siren or search light, did not attempt to block the defendant's path, did not attempt to pursue the defendant, did not display his weapon, and did not use a threatening voice. *Id.* at ¶ 20.

**{¶24}** The *Body* court also noted that "[f]ederal courts have also recognized that 'simply calling out to someone to come over to talk does not constitute a seizure.' " *Id.* at ¶ 18, quoting *United States v. Brown,* 2012 WL 29209 (C.A.6, 2012), citing *United States v. Matthews*, 278 F.3d 560, 562 (6th Cir.2002), abrogated on other grounds, *United States v. McMurray*, 653 F.3d 367 (6th Cir.2011) (holding that an officer's

statement "hey, buddy, come here," did not constitute a seizure because the addressee could have "politely declined to do so, and walked away").

**{¶25}**  {¶ 23} More recently, in *State v. Blankenship*, 4th Dist. Ross No. 13CA3417, 2014-Ohio-3600, 2014 WL 4161479, the Fourth District Court of Appeals held there was a consensual encounter where an officer told the defendant to "step over here," and did not otherwise engage in conduct that could be construed as a show of authority sufficient to constitute a seizure. *Id.* at ¶ 23–24. Specifically, the officer did not pursue the defendant, continue to interrogate the defendant against his expressed desire, call the defendant to halt, block the defendant's path, hold the defendant's identification or other property, physically grab or move the defendant, display his weapon, activate his siren or cruiser lights, or indicate that the defendant's noncompliance would lead to his arrest. *Id.* at ¶ 24. The *Blankenship* court also noted that the officer was alone, and thus acted without the " 'threatening presence of several officers.' " *Id.*, quoting *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶26}** Appellant specifically contends that the Trooper's order to appellant to "come here" constitutes a seizure. In the case sub judice, we find that the encounter was a consensual encounter. We find that the Trooper's request that appellant "come here" did not turn the encounter into a seizure. No evidence exists that the officer used a threatening voice when he told appellant to "come here," that he restrained appellant in any way, or displayed any physical force or weapon. Appellant testified that the Trooper called out to him after appellant exited the market. At the time, appellant was standing 20 or 30 feet from his truck. After appellant told the Deputy about the crack pipe, the Deputy had probable cause to search the truck and appellant.

**{¶27}** Moreover, we note that while the Deputy testified that appellant admitted to having a crack pipe in the truck prior to the Deputy's search of appellant and prior to the search of the vehicle, appellant testified that he did not remember telling the Deputy about a crack pipe. The trial court, based on the testimony and a review of the body camera, found the Deputy's testimony to be more credible than appellant's testimony. The trial court, noted that "when the audio of the body camera comes back on the defendant is responding to a question from Dep. Ernsberger about the last time he smoked "it". It appears to the Court that the defendant is talking about the crack pipe." The trial court further stated, in relevant part, as follows:

**{¶28}** Based on the testimony of the witness and a review of the body camera audio the Court finds Dep. Ernsberger's testimony to be more credible than the defendant's testimony. Accordingly, the Court finds that Dep. Ernsberger had probable cause to search the vehicle. Once searching the vehicle Dep. Ernsberger located the crack pipe and three small baggies containing cocaine. Accordingly the defendant's motion to suppress the evidence located inside the vehicle is hereby overruled as Dep. Ernsberger had probable cause to search the vehicle.

**{¶29}** Having reviewed the body camera video, we agree.

**{¶30}** Furthermore, we find that the crack pipe and cocaine would have been inevitably discovered. The inevitable-discovery rule allows the admission of illegally obtained evidence where "it is established that the evidence would have been ultimately or inevitably discovered during the course of a lawful investigation." *State v. Perkins*, 18 Ohio St.3d 193, 480 N.E.2d 763 syllabus (1985).

**{¶31}** As is stated above, appellant did not have a driver's license and his wife had been arrested. Thus, the truck would have been searched prior to being impounded. The crack pipe was in the ashtray in the middle of the truck. We find that the crack pipe and the cocaine would have been inevitably discovered.

**{¶32}** Appellant also argues that the repeated and unexplained muting of the body camera in this case constitutes spoliation of evidence "that gives rise to a presumption in favor of a defendant concerning the conversation that but for the officer's muting would have been available to the trial court."

**{¶33}** "Spoliation" is defined as: "[t]he intentional destruction, mutilation, alteration, or concealment of evidence[.]" *Black's Law Dictionary* (7th Ed. 2000) 1133.

**{¶34}** Trooper Ernsberger testified that he turned on the body camera before he made or as he was making contact with Brinda Nichols. He testified that when he made contact with appellant, his body camera was on, but the audio was not recording. When asked why the audio was not recording, he testified that he either bumped it or turned off the audio, but did not recall. The body camera video was introduced as joint exhibit A.

**{¶35}** The Trooper testified that it was the Sheriff's Department's protocol to activate the camera when making official contact with someone for some sort of law enforcement action. He testified that he did not realize that the audio did not record during the time of his conversation with appellant until several days later when he reviewed the video. He further testified that he must have realized that it was off because it was turned back on when he was searching the cruiser. He testified that it was "[f]airly easy" to turn off the audio and that once he realized that the body camera was not recording audio, he turned it back on. Transcript at 15. On cross-examination, Trooper Ernsberger testified

that it was common practice to mute the body camera during a stop or investigation but that he did not recall purposely muting his body camera.

**{¶36}** We find that there was no evidence that the Trooper intentionally destroyed or concealed evidence. The trial court found that the audio was inadvertently turned off. In addition, this case involves a criminal, not a civil matter. Spoliation of evidence is inapplicable in a criminal case *State v. Pace,* 3rd Dist. Hancock No. 5–12–30, 2013-Ohio-2143, 2013 WL 2459877, ¶ 17, *State v. Drummond*, 2015-Ohio-939, 31 N.E.3d 1216, 1228.

**{¶37}** Based on the foregoing, appellant's sole assignment of error is overruled.

**{¶38}** Accordingly, the judgment of the Richland County Court of Common Pleas is affirmed.

By: Baldwin, J.

Hoffman, P.J. and

Delaney, J. concur.