[Cite as *State v. Shrewsbury*, 2014-Ohio-716.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA3402 |
| Plaintiff-Appellee, | : | |
| v. | : | <u>DECISION AND</u> <u>JUDGMENT ENTRY</u> |
| SHANNON SHREWSBURY, | : | |
| Defendant-Appellant. | : | **RELEASED:  2/26/14** |

<u>APPEARANCES</u>:

Chase R. Carter, Chillicothe, Ohio, for appellant.

Sherri K. Rutherford, City of Chillicothe Law Director, and Benjamin A. Sigall, City of Chillicothe Assistant Law Director, for appellee.

Harsha, J.

{¶1}    Shannon Shrewsbury appeals his conviction for drug possession.  He claims that the trial court erred in denying his motion to suppress the controlled substances seized from him by two law enforcement agents.

{¶2}    The agents observed Shrewsbury while he was parked in a gas station parking lot.  Because they suspected he was drinking from an "open container," they approached his parked car.  Shrewsbury contends the agents detained him without having a reasonable, articulable suspicion that he was involved in illegal activity.  However, the interaction between the two agents and Shrewsbury did not require constitutional protection until they ordered Shrewsbury to show his hands after he reached toward the vehicle's floor.  At that point, his furtive movement justified the agents in commanding him to place his hands where they could see them and their

contents.  Because this seizure was objectively reasonable, the trial court correctly denied his motion to suppress, and we affirm Shrewsbury's conviction and sentence.

## I.  FACTS

{¶3}   Agents Donald Germany and Collette Shannon of the Ohio Department of Public Safety investigate violations of Ohio's Liquor Control Laws and certain provisions of the criminal code.  Agent Shannon had over five years of experience in that capacity and acted as a field training officer for Agent Germany during this incident.  Agent Germany had been on the job for less than a year, but had previously been a police detective for four years, including working narcotics investigations as an undercover officer, witnessing and participating in hand-to-hand drug transactions.  As part of the agents' duties, they investigate violations of liquor laws on the premises of businesses that have liquor permits.

{¶4}   One evening, Agents Germany and Shannon, who were in plain clothes, drove to the Speedway gas station on the corner of Bridge and Main streets in Chillicothe and parked in front of a gas pump.  Agent Germany observed Shrewsbury exit a red two-door car parked between the air pump and the gas pumps and approach an occupant in a pickup truck, with whom he seemed to quickly exchange something hand to hand.  Based on his training and experience, Agent Germany suspected it might be a drug transaction because of the nature of the exchange and how fast it took place.  Agent Shannon observed Shrewsbury walking up and talking to someone in the truck, but because she was busy parking their car, she did not observe the hand-to-hand transaction.

{¶5}    Shrewsbury then returned to the driver's seat of the parked car and took a drink from a gold or silver metallic-colored can.  After observing the appearance of the can, the agents believed that Shrewsbury was drinking either a beer or another alcoholic beverage.  According to Agent Germany, gold and silver cans are more commonly beer or alcoholic beverage cans.  Based on her past experience with similar looking cans, Agent Shannon thought that Shrewsbury was drinking from a gold Miller beer can.

{¶6}    Based on their observations, the agents believed that Shrewsbury may have been violating the open-container law, and they decided to approach the parked car to determine whether the can contained alcohol.  Agent Germany approached the driver's side of the car, and Agent Shannon approached the passenger side.  There were other occupants in the car who were drinking from a metallic looking can.  When the agents identified themselves as officers and produced their badges, Shrewsbury reached down towards the floor on the driver's side of the car.  The agents immediately ordered him to place his hands on the steering wheel because they were concerned that he was reaching for a weapon.  Shrewsbury opened his hand and revealed a clear plastic container with pills in it.  Ultimately, the agents realized that the can that Shrewsbury had been drinking from did not contain alcohol.

{¶7}    The agents ordered Shrewsbury to exit the car, and he gave them permission to search the vehicle.  Shrewsbury admitted that he had paid $100 for five pills of Suboxone, which is a brand name for buprenorphine.  *See State v. Altman*, 7th Dist. Columbiana No. 12CO42, 2013-Ohio-5883, ¶ 8.  A search of Shrewsbury uncovered a metal container with more Suboxone pills in it.  The agents arrested

Shrewsbury and charged him with one count of possession of drugs in violation of R.C. 2925.11(A), a misdemeanor of the first degree.

{¶8}    After Shrewsbury filed a motion to suppress all evidence taken from him, the Chillicothe Municipal Court held a hearing where the only witnesses who testified were the agents.  The parties submitted posthearing briefs, and the trial court issued a decision denying the motion.  The trial court determined that the state had presented sufficient facts to establish that the agents had a reasonable suspicion that Shrewsbury had committed or was committing a crime and that the agents were justified in investigating the presence of open containers in potential violation of Ohio liquor laws. The court reasoned when Shrewsbury made furtive movements, the officer's safely justified their command to disclose what he held in his hands.

{¶9}    Shrewsbury changed his plea to no contest, and the trial court convicted him of drug possession and sentenced him.  This appeal ensued.

## II.  ASSIGNMENT OF ERROR

{¶10}  Shrewsbury assigns the following error for our review:

The trial court erred in denying Mr. Shrewsbury's Motion to Suppress as the Agents possessed no reasonable, articulable facts necessary for a warrantless search under *Terry v. Ohio*.

## III.  STANDARD OF REVIEW

{¶11}  Appellate review of a trial court's decision on a motion to suppress raises a mixed question of law and fact.  *State v. Hobbs*, 133 Ohio St.3d 43, 2012-Ohio-3886, 975 N.E.2d 965, ¶ 6.  Because the trial court acts as the trier of fact in suppression hearings and is in the best position to resolve factual issues and evaluate the credibility of witnesses, an appellate court must accept the trial court's findings of fact if they are

supported by competent, credible evidence.  *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.   Accepting these facts as true, we must then "independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard."  *Hobbs* at ¶ 8, citing *Burnside* at ¶ 8.

**{¶12}**  Shrewsbury does not attack the trial court's factual findings in its decision denying his motion to suppress.  Therefore, the dispositive issue in this case is whether these facts satisfied the applicable legal standard and supported the trial court's decision to deny the motion.

IV.  LAW AND ANALYSIS

Search and Seizure

**{¶13}**  In his sole assignment of error, Shrewsbury contends that the trial court erred in denying his motion to suppress because the agents possessed no reasonable, articulable facts to support the warrantless stop and search.[1]

**{¶14}**  "The Fourth Amendment to the United States Constitution and the Ohio Constitution, Article I, Section 14, prohibit unreasonable searches and seizures."  *State v. Emerson*, 134 Ohio St.3d 191, 2012-Ohio-5047, 981 N.E.2d 787, ¶ 15.  This constitutional guarantee is protected by the exclusionary rule, which mandates the exclusion of the evidence obtained from the unreasonable search and seizure at trial. *Id.*

**{¶15}**  The Supreme Court of the United States recognizes three types of police-citizen interactions, only the last two of which implicate the Fourth Amendment constitutional prohibition against unreasonable searches and seizures:  (1) a

---

[1] In his statement of the Assignment of Error, Shrewsbury contests the "stop by plain clothes officers…(.)" In his Argument and Law, he phrases the assignment of error as involving an unjustified "warrantless search."  In an abundance of caution, we address both.

consensual encounter, which requires no objective suspicion; (2) a brief, investigatory stop or detention, which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) an arrest, which must be supported by probable cause. *United States v. Williams*, 525 Fed.Appx. 330, 332 (6th Cir.2013); *Florida v. Royer*, 460 U.S. 491, 501-507, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 553, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

**{¶16}** A consensual encounter occurs when an officer approaches a person in a public place, talks with the person, requests information, and the person is free not to answer and walk away. *State v. Jones*, 4th Dist. Washington No. 11CA13, 2012-Ohio-1523, ¶ 9. "' * * * The mere approach and questioning of persons seated within parked vehicles does not constitute a seizure * * *,' i.e. it is a consensual encounter." *Id.*, quoting *State v. Turley*, 4th Dist. Lawrence No. 96CA20, 1997 WL 111761, at *2, citing 3 LaFave, *Search and Seizure*, Section 9.2(b), 408-409 and 415-416 (2 Ed.1987); *State v. Weimer*, 11th Dist. Lake No. 2013-L-008, 2013-Ohio-5651, ¶ 40 (citing the well-settled principle that an encounter may be consensual when a police officer approaches and questions individuals in or near a parked car).

**{¶17}** The trial court determined that the agents had a reasonable suspicion to investigate the existence of an open-container violation and that Shrewsbury's movements towards the floorboard area caused concern for their safety. Because we conclude that the agents' approach of Shrewsbury's parked car did not implicate the Fourth Amendment, we need not consider whether they had a reasonable articulable suspicion for doing so.[2]

---

[2] As an aside, we are not critical of the trial court's conclusion and would in fact reach the same conclusion were we required to address the issue.

{¶18} The agents' actions did not impact Shrewsbury's constitutional right to be free from unreasonable searches and seizures up to and including the time when they approached the parked car where he was sitting and identified themselves as police officers. The agents did not stop the vehicle in which Shrewsbury sat; it was already parked in a public place. And when they identified themselves as officers, they had not yet questioned him or the occupants of the car.

{¶19} The agents decided to approach the vehicle to determine if the open can that Shrewsbury was drinking from was a beer can. Because the officers were able to do that by looking into the car, which was parked in a public place, no unreasonable search or seizure occurred, i.e. no Fourth Amendment interest was involved. *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, ¶ 35 ("The open view doctrine applies where an officer views an object that is not subject to a reasonable expectation of privacy. No search occurs because the owner of the object has voluntarily exposed it to public view"); Katz, *Ohio Arrest, Search and Seizure*, Section 14:5, 349 (2013) (distinguishing "open view" from "plain view" and noting that a "police officer who looks into the car window sees the contents in open view"). In sum, there is no reasonable expectation of privacy in places and objects that are open for the public to see. Absent that expectation, there is no Fourth Amendment protection.

{¶20} When the agents approached the car and identified themselves, Shrewsbury immediately reached down towards the floorboard of the car. The agents were concerned that he was reaching for a weapon and ordered that he place his hands on the steering wheel. In effect, Shrewsbury's furtive movement in reaction to the agents' identification of themselves escalated the matter from a consensual encounter

to an investigatory stop.  *See Jones*, 2012-Ohio-1523, at ¶ 9 (the constitutional

guarantees concerning seizures are implicated if the police officer has by either physical

force or show of authority restrained the person's liberty so that a reasonable person

would not feel free to decline the officer's requests or otherwise terminate the

encounter).

{¶21}  Shrewsbury argues Agent Germany's testimony that he had witnessed

Shrewsbury engage in a suspected drug transaction did not provide the specific,

articulable facts to support an investigative stop. Shrewsbury's argument is irrelevant,

however, because the seizure did occur in response to that suspicion.  It occurred in

response to a perceived risk of harm to agents.

{¶22}  When the agents approached and identified themselves to Shrewsbury,

they did not initiate an investigatory stop.  It was Shrewsbury's conduct of immediately

reaching towards the floorboard below him that necessitated the agents' order to place

his hands on the steering wheel, i.e. to initiate a seizure.  Contrary to Shrewsbury's

assertion, this furtive movement was the impetus for the seizure; it did not occur after

the seizure as he claims in his brief.

{¶23}  When the agents ordered Shrewsbury to raise his hands and disclose

what was in them, they implicated his Fourth Amendment protection.  Thus, we must

now address whether the limited seizure of his person was reasonable.  An officer may

conduct a limited search of a person for weapons if the officer has reasonable concern

for personal or public safety.  *See generally* Katz, *Ohio Arrest, Search and Seizure,* at

§16:1.  Society recognizes the need to protect officers who are engaged in

investigations.  *Id.*, citing *State v. White*, 110 Ohio App.3d 347, 674 N.E.2d 405 (4th Dist. 1996).

**{¶24}**  Normally, persons suspected of open container violations are not within that class of offenses that the Supreme Court of Ohio has indicated justify a virtually automatic right to frisk, such as drug offenses.  However, the totality of the circumstances here involves Shrewsbury's furtive movement toward the floor area of the car and the agents' explicit concern for their safety.  When issues of an officer's safety arise and are supported by articulable facts, courts should not scrutinize the claim too critically, nor should they second guess an officer in a close case.  Katz, *Ohio Arrest, Search and Seizure*, at §16.1.

**{¶25}**  Here the agents both indicated Shrewsbury immediately reached under the seat area when they disclosed their identity.  Both testified they were concerned he may have been reaching for a weapon.  Accordingly, we conclude the agents' order instructing Shrewsbury to place his hands on the steering wheel and to disclose what he held was objectively reasonable in nature and scope.

**{¶26}**  Under the totality of the circumstances, a reasonable officer could believe that Shrewsbury may have been reaching for a weapon, i.e., the agents were not acting on a mere hunch.  The fact that the container Shrewsbury had been drinking from was later determined not to contain alcohol does not require a different conclusion.  The focus is instead on what the agents knew at the time of the investigatory stop.  *See, e.g., State v. Cox*, 5th Dist. Knox No. 10-CA-0016, 2011-Ohio-1316, ¶ 22-23 (affirming denial of motion to suppress evidence seized in an investigatory stop based on trooper's false impression of violation of R.C. 4511.66); *compare Bowling Green v.*

*Godwin*, 110 Ohio St.3d 58, 2006-Ohio-3563, 850 N.E.2d 698, ¶ 15 (fact that defendant could not be convicted of failure to obey a traffic-control device is not determinative of whether the officer acted reasonably in stopping and citing him for that offense").

**{¶27}** Immediately upon the initiation the stop, Shrewsbury raised his hands and revealed the container with pills, which justified the subsequent search, questioning, and arrest.[3] Therefore, the trial court did not err in denying the motion to suppress.

## V. CONCLUSION

**{¶28}** The trial court properly concluded that based on the totality of circumstances, the law enforcement agents had a reasonable suspicion, based on specific, articulable facts for their investigatory stop of Shrewsbury. Having overruled his sole assignment of error, we affirm the judgment of the trial court.

JUDGMENT AFFIRMED.

---

[3] Because Shrewsbury does not contest whether it was immediately apparent the container held contraband, we do not address that issue.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

McFarland, J. & Hoover, J.:  Concur in Judgment and Opinion.


For the Court


BY: _____
      William H. Harsha, Judge



## **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**