**[Cite as *State v. Andrews*, 2025-Ohio-2803.]**

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
SCIOTO COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. 24CA4076 |
| v. | : | |
| MICHAEL WAYNE ANDREWS, | : | DECISION AND JUDGMENT ENTRY |
| Defendant-Appellant. | : | |

---

APPEARANCES:

Shane A. Tieman, Scioto County Prosecuting Attorney, and Jay Willis, Assistant Prosecuting Attorney, Portsmouth, Ohio, for appellee.

Keith A. Yeazel, Columbus, Ohio, for appellant.[1]

---

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED:8-1-25
ABELE, J.

**{¶1}** This is an appeal from a Scioto County Common Pleas Court judgment of conviction and sentence. Michael Andrews, defendant below and appellant herein, assigns the following error for review:

> "THE TRIAL COURT ERRED IN OVERRULING ANDREWS' MOTION TO SUPPRESS. (Order July 7, 2017)."

---

[1] Different counsel represented appellant during the trial court proceedings.

**{¶2}** During a November 2022 traffic stop, Ohio State Highway Patrol Trooper Nicholas Lewis discovered fentanyl, oxymorphone pills, and drug-related criminal tools in a rental vehicle. A Scioto County Grand Jury returned an indictment that charged appellant with (1) one count of trafficking in a fentanyl-related compound in violation of R.C. 2925.03(A)(2), a first-degree felony, (2) one count of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), a second-degree felony, (3) one count of possession of a fentanyl-related compound in violation of R.C. 2925.11(A), a first-degree felony, (4) one count of aggravated possession of drugs in violation of R.C. 2925.11(A), a second-degree felony, (5) one count of possessing criminal tools (rental vehicle) in violation of R.C. 2923.24(A), a fifth-degree felony, and (6) one count of possessing criminal tools (substance used to cut narcotics labeled Super 3 & 1) in violation of R.C. 2923.24(A), a fifth-degree felony. Appellant entered not guilty pleas.

**{¶3}** Subsequently, appellant filed a motion to suppress the evidence discovered during the traffic stop. At the suppression hearing, Trooper Lewis testified that around 12:40 a.m. on November 23, 2022, he observed a black Toyota Camry with Minnesota license plates travel on Route 823, the U.S. 23 bypass. Because the

vehicle appeared to be a rental, and because U.S. 23 is "a major drug trafficking route from Columbus, Dayton and Detroit to Huntington, West Virginia, and all the little towns around Huntington, West Virginia and Ashland, Kentucky," Lewis followed the vehicle, checked the license plates, and determined that the vehicle's registration expired on August 31, 2022.

**{¶4}** When Trooper Lewis initiated a traffic stop based on the expired registration, he spoke with the driver, Andrea Anderson. Lewis asked her to exit the vehicle "to verify her driver's license and show her the expiration on the vehicle." As Anderson exited the vehicle, Lewis shone his flashlight into the car for weapons or contraband and noticed "a white powder in between the seat and the driver's door." Lewis explained that when he observes cocaine at night and shines his light on it, "it always appears to have a bluish tint to it. . . so at this point I believed it was cocaine residue."

**{¶5}** Trooper Lewis patted Anderson down for weapons and placed her in the back of his cruiser. When asked about their travel plans, Anderson said they traveled to Huntington to see appellant's daughter and planned to stay until after Thanksgiving. "So, this was Wednesday morning so it would've been Wednesday, Thursday and

at least at the earliest Friday," so Lewis asked about luggage, and "they had no luggage in the vehicle. So, basically, it's a three day trip with no tooth brush, no deodorant, no clothing, nothing."

**{¶6}** After Lewis checked Anderson's driver's license, he reapproached the vehicle and requested the front seat passenger's, appellant's, identification. Appellant also informed Lewis the couple traveled "to Huntington, WV to see [his] daughter." When Lewis informed appellant that he had observed cocaine residue in the vehicle, appellant "became kind of hostile to the point where I didn't feel comfortable putting my head down to check the cocaine residue with him in the vehicle. So, I asked him to go ahead and step out and I placed him in the rear of my cruiser as well."

**{¶7}** Trooper Lewis explained that in his experience, when a person behaves in a confrontational manner they are "usually someone trying to scare me off of a traffic stop." Sometimes, defendants think that if they "file a complaint or become so hostile that they think I'll back off and not search the vehicle or not go further along with the stop. Which I felt that was the case in this instance." Lewis later stated on cross-examination that a

better word may be argumentative rather than hostile.

**{¶8}** After Trooper Lewis asked appellant to exit the vehicle, patted him down for weapons and placed him in the rear of his cruiser with Anderson. Lewis then returned to the rental vehicle and swabbed the white powder, that tested positive for cocaine. When Lewis showed appellant the test kit, appellant "claimed it was a rental and they had no knowledge of it being in the vehicle."

**{¶9}** When Trooper Lewis searched the vehicle, he also found a Metro PCS bag on the front passenger seat floor. Inside that bag, Lewis found a bag of powder with a fox symbol that is typically "used as a substance to mix with contraband. So, if you have um 20 grams of fentanyl, you may put an extra 10 grams of cut in with it and now you have 30 grams. . . and we commonly see that bag with a fox symbol on it used as cut." Lewis explained that traffickers in the Detroit area use the powder with the fox symbol on it as "cut," but it is sold as plant food. After finding the cut, Lewis searched the center console and found 211 oxymorphone pills and 80 grams of suspected fentanyl.

**{¶10}** On cross-examination, Trooper Lewis stated that when he asks a driver to exit the vehicle and place them in his cruiser, it expedites the stop because he does not have to walk back and forth

to the vehicle to ask about the status of the driver's license and other documents. Lewis added that, if the driver does not wish to exit the vehicle and Lewis has not smelled marijuana or seen contraband in the vehicle, he does not usually force the driver out of the vehicle to check their documentation. Lewis also acknowledged that when a driver or passenger exits their vehicle, he has a better view of the inside of the car. When asked why he believed the bluish powder was cocaine, Lewis stated, "just 18 years of experience and probably a thousand drug arrests." Lewis explained that when he tests a white powder with a bluish tint, "it usually comes back as cocaine residue. I couldn't give you an exact number but vast majority of it if it has a bluish tint to it, it usually comes back as cocaine residue."

**{¶11}** Appellee played Trooper Lewis's body camera video footage for the trial court. The video shows Trooper Lewis approach the passenger side of the stopped rental vehicle, ask driver Anderson for her license, and explain that the "tags are expired." When Anderson informed Lewis that her boyfriend, appellant, rented the car, appellant provided his license to Lewis. Lewis said, "Ma'am, I'll have you come back here real quick, check your driver's license and show you where it's expired and get you out of here,

ok."

**{¶12}** As Trooper Lewis patted Anderson down, he said, "Ran your tags when you guys passed. Where you guys headed to tonight?" The driver replied, "To see my step daughter. In Huntington. We going for Thanksgiving." After Lewis places Anderson in the cruiser, he enters the cruiser and says, "You weren't speeding or anything. I just ran the tag and it came back." Lewis showed Anderson where the rental vehicle's registration tag expired on August 31, 2022. "You won't get a ticket but you'll definitely let them [the rental car company] know". When Lewis asked, "How long you guys staying in Huntington?," Anderson replied, "Until right after Thanksgiving." When asked if the couple possessed any luggage for their trip, Anderson responded, "No." Lewis then stated, "You guys don't have anything illegal in the car do you?" Anderson replied, "No." Lewis asked, "You don't care if I take a look real quick?," to which Anderson replied, "No."

**{¶13}** After Trooper Lewis reapproached the vehicle, he asked appellant about the couple's travel plans. Appellant replied, "going to see my daughter in Huntington." When Lewis asked how long they would stay, appellant replied, "Ain't make it there yet." Appellant handed Lewis what appeared to be the rental agreement.

Lewis asked, “Anything illegal in the car? . . . You don’t care if I take a look real quick?” Appellant replied, “I mean, I don’t see what’s the reason.” Lewis stated, “Well, she kinda said you guys are staying down there for awhile. But she said you don’t have any luggage in the car. . .” Appellant replied, “Come on, cut the crap right now. That ain’t got nothing to do with nothing.” Lewis asked, “what do you mean?” Appellant replied, “I mean, you telling me she saying. . . what is the reason. . . what is the point right now. . . what is you saying? I’m about to get hostile with you.” Lewis replied, “well, don’t get hostile with me.” Appellant stated, “I’m not going to get hostile with you at all. I’m saying . . . I don’t understand. Let me call somebody.” Lewis replied, “You can call whoever you want.” Appellant asked, “Can you call somebody who’s like a sheriff?”

**{¶14}** Trooper Lewis explained that he “could have the car towed because it’s got an expired registration,” but “I’m trying to be nice to you.” Lewis said, “I asked her a simple question. She said you guys staying past Thanksgiving which would be Friday and you don’t have any luggage with you, so to me it looks funny. . . maybe they can get you a new car and I can tow this one.” Lewis continued, “I tell you what man, I’m actually going to have you

come back here with me real quick." Appellant asked, "Why do you want me to get out of the car?" Lewis replied, "well, there's some white powder over there. . . on the floor." After appellant exited the vehicle, Lewis patted him down for weapons and asked him to sit in his cruiser. Appellant stated, "you don't think you're violating my rights officer?" Lewis replied, "How am I violating your rights?" Appellant stated, "You take me out of my car. . . we haven't done anything wrong. . . it's around the holidays. . . we haven't done anything wrong." Lewis responded that he planned to check the white powder he saw on the rocker panel (the space between the seat and the door) when Anderson exited the vehicle. Appellant asked, "can you show me the white powder first?"

**{¶15}** After Trooper Lewis checked the driver's licenses and explained the registration expiration, he returned to the rental vehicle, tested the white powder on the driver's side floor, and then returned to the cruiser with the swab that turned blue. Lewis asked, "How long you had the car for sir? You see that little blue spot right there? This is a cocaine test kit." When asked where he found cocaine, Lewis replied, "on the rocker panel between the seat and the door. Am I going to find anything in your car?" Appellant replied, "No."

**{¶16}** After Trooper Lewis searched the vehicle and found pills, the bag that contained a white powder substance, and material used to "cut" narcotics," he returned to the cruiser. He then advised Anderson and appellant of their *Miranda* rights, which both acknowledged understanding. After Lewis photographed the contraband and the rental vehicle and placed the drugs on the hood of the cruiser, Lewis asked, "Whose those pills and I guess that's heroin belong to?" After appellant and Anderson denied ownership, Lewis said, "Dude the cut was in your Metro bag up front. . . between your feet. . . the cut was in that bag." Appellant argued that because the vehicle is a rental, "somebody else in the car."

**{¶17}** Subsequently, the trial court overruled the motion to suppress evidence. Appellant then entered a no contest plea to the indictment, the court accepted appellant's plea and found him guilty. The court then: (1) merged Count 3 possession of drugs with Count 1 trafficking in drugs and sentenced appellant on Count 1 to an 11-year mandatory minimum to 16 ½ years maximum indefinite term, (2) merged Count 4 aggravated possession of drugs and Count 2 aggravated trafficking in drugs and sentenced appellant on Count 2 aggravated trafficking to serve 6 years, (3) ordered that appellant serve a 12-month prison term on Count 5 possessing criminal tools,

(4) ordered that appellant serve a 12-month prison term on Count 6 possessing criminal tools, (5) ordered that appellant serve sentences for Counts 1, 2, 5 and 6 concurrently to one another for a total intended sentence of 11-year minimum to 16 ½ year maximum with 11 of those years being mandatory, (6) ordered that appellant serve a 2 to 5-year postrelease control term, and (7) ordered appellant to pay costs. This appeal followed.

I.

**{¶18}** In his sole assignment of error, appellant asserts that the trial court erred when it denied his motion to suppress evidence. In particular, appellant argues that (1) he did not consent to a search of the vehicle, (2) Trooper Lewis lacked particularized and objectively reasonable suspicion that criminal activity was afoot, and (3) this is not a search incident to lawful arrest because appellant was not within reaching distance of the vehicle's passenger compartment at the time Lewis initiated the search.

**{¶19}** Generally, appellate review of a motion to suppress evidence presents a mixed question of law and fact. *State v. Hawkins*, 2019-Ohio-4210, ¶ 16, citing *State v. Burnside*, 2003-Ohio-

5372, ¶ 81, *State v. Hansard,* 2020-Ohio-5528, ¶ 15 (4th Dist.). When ruling on a motion to suppress evidence, a trial court assumes the role of trier of fact and is best positioned to resolve questions of fact and evaluate witness credibility. *State v. Roberts*, 2006-Ohio-3665, ¶ 100. Thus, a reviewing court must defer to a trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. *Id.*; *State v. Fanning*, 1 Ohio St.3d 19, 20 (1982); *State v. Debrossard*, 2015-Ohio-1054, ¶ 9 (4th Dist.). A reviewing court must then independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the case's facts. *See Roberts* at ¶ 100; *Burnside*, *supra*, at ¶ 8.

**{¶20}** The Fourth and Fourteenth Amendments to the United States Constitution and Section 14, Article I of the Ohio Constitution protect individuals from unreasonable governmental searches and seizures. *State v. Shrewsbury,* 2014-Ohio-716, ¶ 14 (4th Dist.), citing *State v. Emerson*, 2012-Ohio-5047, ¶ 15. The exclusionary rule protects this constitutional guarantee and mandates the exclusion of evidence obtained from an unreasonable search and seizure. *Id.*

**{¶21}** A traffic stop initiated by a law enforcement officer

constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809-810 (1996). Thus, a traffic stop must comply with the Fourth Amendment's general reasonableness requirement. *Id.* An officer's decision to stop a vehicle is reasonable when the officer has probable cause or reasonable suspicion to believe that a traffic violation has occurred. *Id.* at 810 (citations omitted); *accord State v. Mays*, 2008-Ohio-4539, ¶ 23; *Dayton v. Erickson*, 76 Ohio St.3d 3, 11-12, (1996). Law enforcement officers also may stop a vehicle if they have reasonable suspicion "that criminal activity ' "may be afoot." ' " *United States v. Arvizu*, 534 U.S. 266, 273 (2002), quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989), quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968).

**{¶22}** A police officer who observes a de minimis violation of traffic laws may stop a driver. *State v. Netter,* 2024-Ohio- 1068, ¶ 15, citing *Debrossard*, 2015-Ohio-1054 at ¶ 13 (4th Dist.), citing *State v. Guseman*, 2009-Ohio-952, ¶ 20 (4th Dist.), citing *State v. Bowie*, 2002-Ohio-3553, ¶ 8, 12, and 16 (4th Dist.), citing *Whren* at 809-810. Moreover, the Supreme Court of Ohio has held, "Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not

unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop[.]" *Dayton, supra,* 76 Ohio St.3d 3, paragraph one of the syllabus.

**{¶23}** In the case sub judice, the trial court observed that the parties did not dispute that the rental vehicle's license plates had expired, thus making the stop proper. *See State v. Mapes*, 2005-Ohio-3359, ¶ 39 (6th Dist.)(initial stop proper because probable cause arose for officer to execute traffic stop when officer performed computer check on defendant's license plate and discovered it had expired). Accordingly, Trooper Lewis possessed a reasonable and articulable suspicion to initiate the traffic stop.

**{¶24}** After Trooper Lewis properly initiated the traffic stop, Trooper Lewis asked Anderson to exit the car "to verify her driver's license and show her the expiration on the vehicle." Lewis added that placing the driver in his cruiser "expedites the stop" because he does not need to walk back and forth from his cruiser to the driver's vehicle if he has further questions or needs clarification or other documents.

**{¶25}** Generally, during a traffic stop an officer may order all occupants to step out of a vehicle pending completion of the

traffic stop. *Maryland v. Wilson*, 519 U.S. 408, 414(1997); *accord State v. Grubbs*, 2017-Ohio-41, ¶ 29 (6th Dist.). *See also Pennsylvania v. Mimms*, 434 U.S. 106, 111, n. 6 (1977) ("once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable seizures."); *State v. Maddux*, 2010-Ohio-941, ¶ 6 (6th Dist.) (officer may order motorist to exit vehicle properly stopped for traffic violation); *State v. Kilbarger*, 2012-Ohio-1521, ¶ 16 (4th Dist.)(once officer lawfully stops driver, officer may order driver to exit vehicle without additional justification); *State v. Alexander-Lindsey*, 2016-Ohio-3033, ¶ 14 (4th Dist.)("officers can order a driver and a passenger to exit the vehicle, even absent any additional suspicion of a criminal violation").

**{¶26}** Next, we turn to what transpired when driver Anderson exited the vehicle. As she exited, Trooper Lewis shined his flashlight into the vehicle. He testified at the suppression hearing

> Um so basically just to my eyes it's the only way to describe it. When I see cocaine residue at night and shine my light on it, it always appears to have a bluish tint to it. I don't know if it's the chemicals they use to cut it with, um but when I shine my light on it, it usually has a bluish tint to it. Um, so at this point I believed it was

cocaine residue.

**{¶27}** On cross-examination, Lewis testified that, if a driver opens their door, "it gives me a chance to again check for weapons, contraband or anything like that." When Lewis shined his flashlight into the vehicle as driver Anderson exited, Lewis observed the white powder with a bluish tint in the carpeted area between the driver's seat and the door, an area he described as the "rocker panel." The trial court concluded that the cocaine residue Trooper Lewis observed when he shone his flashlight into the vehicle as the driver exited constituted admissible plain view evidence. We agree.

**{¶28}** The Supreme Court of Ohio has held that the Fourth Amendment protects the individual's actual and justifiable expectation of privacy from the ear and eye of the government. *State v. Buzzard,* 2007-Ohio-373, ¶ 13, footnote omitted, citing *Smith v. Maryland*, 442 U.S. 735, 740–741 (1979); *Katz v. United States*, 389 U.S. 347, 351 (1967). Thus, if the State wishes to intrude on the individual's right to be secure in his person, house, paper, and effects by searching or seizing him or his things, the State must first secure a warrant. *Buzzard, supra,* citing Section 14, Article I, Ohio Constitution. Accordingly, the

plain-view or open-view doctrine "embodies the understanding that privacy must be protected by the individual, and if a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them." *Id.* at ¶ 16, citing *Horton v. California*, 496 U.S. 128, 134–137, 140–142 (1990).

**{¶29}** In the case at bar, although the trial court refers to the "plain view" doctrine, as we observed in *State v. Hobbs,* 2018-Ohio-4059 (4th Dist.):

> "[t]he plain view doctrine applies to warrantless seizures, not warrantless searches. The open view doctrine applies where an officer views an object that is not subject to a reasonable expectation of privacy. No search occurs because the owner of the object has voluntarily exposed it to public view." *State v. Bradford*, 4th Dist. Adams No. 09CA880, 2010-Ohio-1784, 2010 WL 1632318, ¶ 35, citing Katz and Giannelli, Ohio Criminal Law (2 Ed.), Section 16:3. Thus, "if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation of privacy and thus no 'search' within the meaning of the Fourth Amendment—or at least no search independent of the initial intrusion that gave the officers their vantage point." *Minnesota v. Dickerson*, 508 U.S. 366, 375, 113 S.Ct. 2130, 2137, 124 L.Ed.2d 334, (1993) (citations omitted); *Florida v. Riley*, 488 U.S. 445, 449, 109 S.Ct. 693, 696, 102 L.Ed.2d 835 (1989), quoting *California v. Ciraolo*, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986), quoting *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967) (" 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.' "); see *State v. Buzzard*, 112 Ohio St.3d 451, 2007-Ohio-373, 860 N.E.2d 1006, 2007

> WL 284330, ¶ 17 (2007) (stating that "mere observation of an object in plain view does not constitute a search"). Consequently, "information obtained as a result of observation of an object in plain sight may be the basis for probable cause * * *." *Texas v. Brown*, 460 U.S. 730, 739, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983), fn. 4; *see generally Washington v. Chrisman*, 455 U.S. 1, 12–14, 102 S.Ct. 812, 819–20, 70 L.Ed.2d 778 (1982) (White, J., dissenting) (explaining that "[i]f a police officer passing by an open door of a home sees incriminating evidence within the house, his observation may provide probable cause for the issuance of a search warrant").

*Id.* at ¶ 43.

**{¶30}** Furthermore, law enforcement officers generally " ' "are free to observe whatever may be seen from a place where they are entitled to be."' " *Hobbs* at ¶ 44, citing *State v. Buzzard*, 2007-Ohio-373, ¶ 15, quoting *United States v. Fields*, 113 F.3d 313, 321 (C.A.2, 1997); *State v. Johnson*, 2007-Ohio-4662, ¶ 14 (4th Dist.) ("Generally, the police are free to observe whatever may be seen from a place where they are entitled to be."). Thus, "if a police officer is lawfully on a person's property and observes objects in plain or open view, no warrant is required to look at them." *Buzzard* at ¶ 16, citing *Horton v. California*, 496 U.S. 128, 134-137, 140-142 (1990); *State v. Halczyszak,* 25 Ohio St.3d 301, 303 (1986), quoting *Illinois v. Andreas*, 463 U.S. 765, 771 (1983) (stating that " 'once police are lawfully in a position to observe

an item first-hand, its owner's privacy interest in that item is lost' ").

**{¶31}** In accordance with the "open view" doctrine, when a police officer can observe contraband without making a prior physical intrusion into a constitutionally protected area, such as when a police officer "sees an object. . . within a vehicle," there "has been no search at all." *State v. Harris*, 98 Ohio App.3d, 543, 547, (8t Dist. 1994), quoting 1 Wayne R. LaFave, Search and Seizure, Section 2.2(a) (2d Ed.1987); *State v. Gregory*, 2023-Ohio-331, ¶ 77 (6th Dist.). The *Harris* court reasoned that "a distinction should be made between evidence discovered in plain view, invoking Fourth Amendment analysis, and evidence discovered in open view, which does not invoke Fourth Amendment analysis." *Id.* at 546; *Gregory* at ¶ 78.

**{¶32}** Here, the white powder Trooper Lewis observed between the driver's seat and the driver's door is open view evidence. However, the same result may be obtained under a plain view analysis. Under the Fourth Amendment's plain-view doctrine, an officer may seize an object in plain view without a warrant if (1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be viewed, (2) the object's

incriminating nature is immediately apparent, and (3) the officer has a right to access the object where it is located. *State v. Burroughs,* 2022-Ohio-2146, ¶ 16, citing *Horton*, 496 U.S. 128 at 136-137. There is simply no reasonable expectation of privacy in the outward appearance of an object that has been left in plain view. *Id.*, citing *Horton* at 133. *See State v. Jackson*, 2021-Ohio-517, ¶ 16 (1st Dist.)(incriminating nature readily apparent when officer walked up to car, looked in, and found marijuana cigarette plainly visible).

**{¶33}** In *State v. Claytor*, 85 Ohio App.3d 623 (4th Dist. 1993), an officer looked through a car window and observed an open plastic bag containing a white powder on the driver's seat where appellant had been sitting. This court concluded that the officer was in a position where he could lawfully view the contraband. *Id.* at 628. *See also State v. Gainer,* 2004-Ohio-2393 (8th Dist.)(weapon properly seized pursuant to plain view exception to warrant requirement when officer first observed weapon when driver exited vehicle); *State v. Ballein*, 2025-Ohio-1240 (4th Dist.)(officer properly asked driver to exit the vehicle and when driver exited, officer observed the drug pipe and bag of methamphetamine in plain view).

**{¶34}** Moreover, many courts have concluded that the use of a flashlight by a police officer in dark situations does not, by itself, elevate an officer's actions to a search:

> *See, e.g., [State v. ]Reaves,* [2000 WL 1643808, (2d Dist. Nov. 3, 2000] *supra*, at p. 3 (finding that shining a flashlight into a vehicle allowing the officer to recognize the butt end of a gun sticking out from under the seat does not constitute a "search" which triggers Fourth Amendment protections); *[State v. ]Strothers,* [2000 WL 1867594, (2d Dist. Dec. 22, 2000] *supra*, at p. 3 (holding that use of flashlight to look into pocket where baggie was protruding was insignificant); *State v. Ward* (Nov. 16, 1994), Montgomery App. No. CA 14186, unreported, at p. 2 (holding that use of flashlight to look into a car finding a weapon did not constitute a search). "The use of a flashlight by a police officer does not negate the fact that an item is otherwise in plain view or that its discovery is inadvertent." *Id.*, citing *State v. Kirk* (Jan. 26, 1984), Montgomery App. No. 8249, unreported. *See, also, Texas v. Brown*, 460 U.S. 730, 740 (1983).

*State v. White*, 2002-Ohio-262, *5 (2d Dist.)

**{¶35}** The second prong of the plain view analysis, the "immediately apparent" requirement, is satisfied when police possess probable cause to associate an object with criminal activity. *State v. Stewart,* 2025-Ohio-1189, ¶ 20, citing *State v Waddy,* 63 Ohio St.3d 424, 442 (1992), citing *State v. Halczyszak*, 25 Ohio St.3d 301 (1986); *State v. Hakim*, 2018-Ohio-969, ¶ 24 (8th Dist.). The Supreme Court of Ohio has held that "in ascertaining the required probable cause to satisfy the immediately apparent

requirement, police may rely on their specialized knowledge, training and experience." *Halczyszak* at 307.

**{¶36}** In the case sub judice, appellant contends that police may not move evidence to determine criminality, citing *Arizona v. Hicks*, 480 U.S. 321, 324-25 (1987). Appellant argues that because Trooper Lewis later moved the cocaine residue from the floor of the rental vehicle to a test strip, it somehow invalidates the "immediately apparent" requirement. However, Trooper Lewis testified that he understood the criminality of the substance before he confirmed it with the test kit.

> Q. And can you describe (inaudible) knowledge, training and experience that white powder has significance to you?
>
> A. Um so basically just to my eyes it's the only way to describe it. When I see cocaine residue at night and shine my light on it, it always appears to have a bluish tint to it. I don't know if it's the chemicals they use to cut it with, um but when I shine my light on it, it usually has a bluish tint to it. Um, so at this point I believed it was cocaine residue.

Later during cross-examination, Trooper Lewis testified

> Q. So, this isn't State Patrol policy or you haven't done research about what could possibly -
> A. I think it has to do with something - the chemicals they use to cut it with, but I am not sure? I just - like I said I base it on 18 years of doing drug interdiction, it always appears to have a bluish tint to me. That's how I differentiate between just like I said powder off a powder donut and cocaine residue.

Q. But you've not conducted any kind of tests to verify that this is a fact -

A. No sir, just 18 years of experience and probably a thousand drug arrests.

**{¶37}** In *Halczyszak, supra,* the Ohio Supreme Court distinguished the application of the plain view doctrine to stolen automobiles versus drugs and noted that "nothing about an auto itself proclaims its illegal character." *Id.* at 208. Thus, cars differ from "accumulations of white powder or plants possessing distinctive leaves or odors." *Id.*

**{¶38}** Again, in ascertaining the existence of probable cause, police officers may rely on their specialized knowledge, training, and experience. *Id.* at 303. *See also State v. Johnson*, 2013-Ohio-575, ¶ 33 (8th Dist.)(safe initially examined for weapon but upon opening it, officer found white powder believed to be cocaine; once evidence of a drug-related crime uncovered, law enforcement authorized to seize related items because incriminating nature of items immediately apparent.); *State v. Little*, 2000 WL 1514242 (8th Dist. Oct. 12, 2000)(officers almost immediately observed "a large cloud of white powder in the back seat of the car" and a large plastic bag.; officers reasonably concluded, based on their

training and experience, that this white, powdery substance was more likely than not cocaine; thus providing probable cause to effect an arrest under the plain view doctrine.); *State v. West*, 1988 WL 126715, (9th Dist. Nov. 23, 1988)(officer on public street viewed black bag in car covered with white powder; officer's experience led him to immediately conclude white powder was cocaine; thus cocaine properly admitted under plain view doctrine). *Compare Hakim*, *supra*, 2018-Ohio-969, ¶ 26 (8th Dist.)(officer who found white powder inside a pill bottle testified that when he first saw the bottle he was unsure what it contained; criminal nature of the item was not immediately apparent for plain view analysis).

**{¶39}** In the case at bar, appellant contends that the trial court "should not have credited Trooper Lewis' self-proclaimed ability to see a bluish tint on cocaine residue and not a powdered donut as objective evidence of contraband." However, the trial court concluded

> Trooper Lewis is not required to definitely know it [the white powder] is cocaine. The standard is whether Trooper Lewis had probable cause to continue on with additional investigatory steps. Trooper Lewis has 18 years of experience dealing with various drugs, including cocaine. In addition, he has been an instructor teaching Drug Identification at the Academy. Trooper Lewis' training and experience led him to believe the powder was not mere

> debris, but cocaine. He does not have to have a lab test to have probable cause. This court finds that Trooper Lewis' observation of the powder with a bluish tint, coupled with his extensive field experience, gave Lewis reason to believe that a drug crime had been or was being committed. As such, he had probable cause, and the search of the vehicle was Constitutional and the evidence found is admissible.

**{¶40}** We agree. Further, as appellee points out, in addition to seeing the white powder in plain view, appellant's hostility toward Trooper Lewis arguably gave him additional cause to believe criminal activity occurred and provided reasonable suspicion to expand the scope of the stop and to search the vehicle. *State v. Rose*, 2006-Ohio-5292, ¶ 17 (4th Dist.). The body camera footage reveals that when Lewis told appellant that Anderson stated that the couple would be in Huntington, West Virginia through Thanksgiving and the couple had no luggage in the car, appellant replied, "Come on, cut the crap right now. That ain't got nothing to do with nothing." Appellant continued, "What is the reason. . . what is the point right now. . . what is you saying? I'm about to get hostile with you."

**{¶41}** Turning to the final plain view analysis prong, Trooper Lewis had a right to access the white powder residue where it was

located. As the trial court observed, "Trooper Lewis testified that what he saw was not just white powder. It was a white powder that when he shone the light on it had a bluish tint. In his 18 years of experience he had encountered such powder with a bluish tint in the light, and that he had seen that it tested for cocaine in the majority of cases." Once Trooper Lewis observed the white powder on the floor of the vehicle between the seat and the door, he had probable cause to believe that appellant's car contained contraband. *Jackson*, 2022-Ohio-4365, ¶ 28. Then, under the automobile exception to the Fourth Amendment's warrant requirement, officers may search a vehicle without obtaining a warrant when they have probable cause to believe the vehicle contains evidence of illegal activity. *Id.*, citing *Chambers v. Maroney*, 399 U.S. 42, 51 (1970).

**{¶42}** Although appellant contends that neither he nor driver Anderson consented to the vehicle search, no consent was necessary due to the plain view nature of the cocaine residue. Further, appellant's assertion that this search did not constitute a search incident to lawful arrest is irrelevant. After Trooper Lewis observed the cocaine residue in plain view, Lewis possessed probable cause to believe that appellant and Anderson possessed

and/or trafficked in narcotics and therefore, provided probable cause to search the vehicle.

**{¶43}** Accordingly, based upon the foregoing reasons, we overrule appellant's sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed. Appellee shall recover from appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Scioto County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hess, J. & Wilkin, J.: Concur in Judgment & Opinion

For the Court

BY:______________________________

Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.